CASES DETERMINED

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1917.

---

B. F. BUSH, Receiver, Respondent, v. KEYSTONE DRILLER COMPANY, Appellant.

**Springfield Court of Appeals, December 20, 1917.**

**CARRIERS: Interstate Shipment: Action for Freight: Estoppel.** Estoppel is not available as defense to action for balance of freight for interstate shipment where, through mistake in computation, the full lawful rate, which could not be varied, was not collected, though the consignor, who also was consignee, will suffer loss through insolvency, arising since the original payment, of the person to whom the goods while in transit were sold, with indorsement and delivery of the bill of lading.

Appeal from Jasper Circuit Court.—*Hon. B. A. Pearson,* Judge.

AFFIRMED.

*J. D. Harris* for appellant.

*Jas. F. Green* and *A. E. Spencer* for respondent.

199 M. A.]                     (152)

BRADLEY, J.—Plaintiff, as receiver for the St. Louis, Iron Mountain & Southern Railway Company, brought suit against defendant to recover a balance claimed for freight for an interstate shipment, and a jury was waived and the cause tried before the court. Judgment went for the plaintiff, and defendant duly perfected its appeal to this court. We set out the pleadings in part which is necessary in view of the stipulations. Plaintiff demurred to all that part of defendant's answer except the first paragraph, and the court sustained this demurrer.

No evidence was taken, but it was stipulated that plaintiff had offered evidence tending to prove all the allegations of the petition, and that defendant had offered evidence tending to prove all the allegations in the second paragraph of its answer. The plaintiff objected to the offering of defendant, and the court sustained the objection.

The part of plaintiff's petition containing the allegations of fact is as follows:

"That on the dates hereinafter mentioned, the Pennsylvania Railroad Company was engaged in operating a line of railroad extending, amongst other points, from Beaver Falls, Pennsylvania, to Chicago, Illinois, and the Chicago & Alton Railroad was engaged in operating a line of railroad extending, amongst other points, from Chicago, Illinois, to East St. Louis, Illinois, and to St. Louis, Missouri, and each of said last named companies were engaged as common carriers in transporting freight for hire over their respective lines.

That heretofore, to-wit, on October 2, 1913, said defendant Keystone Driller Company loaded in car initial P. C. C. & St. L. and No. 939534, the following merchandise, to-wit: (Here follows items of shipment), and delivered same to said Pennsylvania Railroad Company at Beaver Falls, Pennsylvania, for transportation to Inola, Oklahoma, said shipment being routed by said shipper over the Pennsylvania Railroad Company's lines to Chicago, Illinois, over the Chicago

& Alton Railroad lines from Chicago, Illinois, to St. Louis, and over the lines of the St. Louis, Iron Mountain & Southern Railway Company from St. Louis, to Inola, Oklahoma, said shipment being consigned to the order of said defendant Keystone Driller Company at said destination. That said shipment was received by said Pennsylvania Railroad Company, which agreed to make said shipment, and issued its written and printed bill of lading therefor, duly signed by said receiving carrier and by said defendant, in and by which bill of lading and contract for shipment it was agreed, amongst other things, that the owner or consignee shall pay the freight and all other lawful charges accruing on said property, and if required shall pay the same before delivery. That said defendant was both the owner and the consignee of said goods. That the weight of said goods shipped as aforesaid, was 47,100 pounds. That said goods were transported over said lines of railway in accordance with said contract, and were delivered at Inola, Oklahoma, to the said consignee or its order, and that at said time there was paid on account of the freight charges for said shipment the sum of $183.60. That said shipment was interstate in character, and that the several carriers above mentioned had then on file with the Interstate Commerce Commission and approved by it and duly published according to law, tariffs and rates covering such shipments between said points, and which constitute the only proper and lawful rate and charge therefor, as follows: The rate on said shipment from Beaver Falls, Pennsylvania, to St. Louis, Missouri, twenty-two and one-half (22 1-2) cents per 100 lbs., and from St. Louis to Inola, Oklahoma, fifty-four (54) cents per 100 lbs., making total rate of seventy-six and one-half (76 1-2) cents per 100 lbs. from Beaver Falls, Pennsylvania, to Inola, Oklahoma, and making the total lawful charge on said shipment, weighing 47,100 pounds as above stated, $360.32. That said St. Louis, Iron Mountain & Southern Railway Company was the last and delivering carrier of said goods, and is required by law and the

order of the interstate Commerce Commission to bring this action to recover the unpaid balance of freight charges. That there remains due and owing to this plaintiff, as receiver of said St. Louis, Iron Mountain & Southern Railway Company, on account of said freight charges on said shipment, after giving credit for said payment of $183.60 a balance of $176.72. That on October 26th, 1915, plaintiff demanded of defendant payment of said amount, which was refused, and the defendant has failed and refused to pay same or any part thereof.''

The answer is as follows:

''Now comes the defendant and for its answer to the plaintiff's petition herein, admits that the plaintiff is the receiver of the St. Louis Iron Mountain & Southern Railway Company, as alleged in the plaintiff's petition; admits that on October 2, 1913, defendant shipped the merchandise set out in the plaintiff's petition by freight in the car therein described, from Beaver Falls, Pennsylvania, to Inola, Oklahoma; but denies each and every other allegation therein contained.

Defendant further answering to said petition says that the initial carrier of said shipment was the Pennsylvania Railway Company, mentioned in the plaintiff's petition, which agreed to make said shipment from said Beaver Falls, Pennsylvania, to Inola, Oklahoma, aforesaid and issued to the defendant its printed and written bill of lading therefor, duly signed and sealed by said receiving carrier; that thereafter while said shipment was in the hands of said carriers, defendant, for value received, duly assigned said bill of lading to R. A. Stewart and J. M. McNames, and that by said assignment said Stewart and McNames became the owners of said property and were such owners when said shipment reached its destination at Inola, Oklahoma, in the hands of the plaintiff; that thereafter said Stewart and McNames presented said bill of lading to plaintiff's agent at said point and offered to pay all freight charges upon said shipment at the regular

terms of rate, and that as to this defendant, it then and there became the duty of the plaintiff through its agent to collect from said Stewart and McNames all tariffs, freight charges and costs held by the plaintiff or any said carriers thereon; that the plaintiff's agent at Inola, Oklahoma, at the time and place of collecting said freight charges had then and there before him the way-bill of said car, showing the charges and correct weight of said merchandise, and if the plaintiff failed to collect the sufficient amount of freight charges thereon, it was through the direct result of its own carelessness and negligence through and by its said agent in failing to look at said way-bill and to figure said freight charges and to demand the same of Stewart and McNames, owners of said property. Defendant further avers that said Stewart and McNames were solvent at the time of said collection and at the time said property was turned over to them by said Railway Company and were so solvent for a long time thereafter; but that the plaintiff failed to demand said balance, if any of said freight charges from said parties or either of them, and failed to give this defendant any notice that there were any unpaid freight charges on said shipment, and that no notice whatever of any such claim on the part of the plaintiff was made to this defendant until the 26th day of October, 1915; that in the meantime said Stewart and McNames had become insolvent and that they have ever since been in an insolvent condition and are now wholly insolvent; and that the plaintiff by its negligence and conduct aforesaid, has rendered it impossible for the defendant to reimburse itself from said Stewart and McNames, if it should pay any part of said freight for them; that this defendant was not the owner of said property at the time same was delivered by said plaintiff carrier to said Stewart and McNames and was not liable for any of said freight charges, said Stewart and McNames being liable for all such charges as such owners; and that even if defendant had been liable therefor as consignor and original consignee of said shipment as

charged in plaintiff's petition, plaintiff has by its con-
duct rendered it impossible for the defendant to collect
any part of said charges from said Stewart and
McNames on account of their insolvency as aforesaid,
which defendant could have done had it had any notice
of any such claim, and thereby relieved itself from any
such imputed demand; and that by reason of the
premises the plaintiff is now estopped from asserting
such demand sued on in its petition against the defend-
ant.''

Was the court in error in sustaining the demurrer
to that part of defendant's answer pleading estoppel,
and in sustaining the objection to defendant's offer
to make proof of the facts set up in its plea of estoppel?
The correct answer to this question settles the contro-
versy so far as the law side of the argument is con-
cerned.

The shipper and consignee in the instant case is one
and the same. The defendant shipper requested the
plaintiff in effect to ship to itself from Beaver Falls,
Pennsylvania to Inola, Oklahoma certain freight. At
that time the defendant was the owner and shipper and
was primarily for the lawful charges of transportation.
[Yazoo & M. V. R. Co. v. Picher Lead Co., 190 S. W.
(Mo. App.) 387; Wells Fargo & Co. v. Cuneo, 241 Fed.
727.] While in transit the defendant assigned the
shipment, and endorsed and delivered the bill of lading,
and the title to the shipment passed to another. The
assignee of the consignee in a bill of lading is liable to
the carrier for transportation charges where the assign-
ment is made while the goods are in transit, or in the
possession of the carrier (St. Louis Southwestern Ry.
Co. v. Brown Grain Co., 166 S. W. (Tex.) l. c. 42; 4
Elliott on Railroads, sec. 1559; 2 Hutchinson on
Carriers, secs. 807-808), and where the carrier delivers
the goods to the assignee of the consignee without
collecting the freight charges, the consignee is usually
released. But it is not necessary to determine whether
the defendant as consignee is liable, but has the de-
fendant as consignor or shipper brought itself within

any rule of law that would release it from its original liability? We do not think so. The fact that the defendant as consignee endorsed the bill of lading to another, and that the carrier collected a part of the charges from the assignee, would not of itself relieve the shipper of his original liability.

The only question for our determination is: Will the defense of estoppel lie?

N. Y. N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 50 L. Ed. 515, 26 Sup. Ct. Rep. 272, defines the purpose of the act known as the Interstate Commerce Act, from which the Interstate Commerce Commission derives its power to regulate interstate rates, and it is there said: (l. c. 389)

"The all-embracing prohibition against either directly or indirectly charging less than the published rate shows that the purpose of the statute was to make the prohibition applicable to every method of dealing by a carrier by which the forbidden result could be brought about. If the public purpose which the statute was intended to accomplish be borne in mind, its meaning becomes, if possible, clearer."

The proposition that the shipper and the carrier on an interstate shipment cannot contract for a rate different to that prescribed by the schedule filed with the Interstate Commerce Commission is not controverted. This question was once mooted, but no longer. [Texas & Pac. Ry. Co. v. Mugg & Dryden, 202 U. S. 242, 50 L. Ed. 1011, 26 Sup. Ct. Rep. 628; Kansas City Southern Railway Company v. Albers Commission Co., 223 U. S. 573, 56 L. Ed. 556, 32 Sup. Ct. Rep. 362; Dunne & Grace v. Railroad Co., 166 Mo. App. 372, 148 S. W. 997.]

The shipper cannot plead a counterclaim for damages to the goods shipped, no matter how meritorious his claim may be. I. C. C. R. R. Co. v. Hoopes, et al., 233 Fed. 135, was an action for unpaid freight charges on an interstate shipment. Defendants filed a counterclaim for damages to the goods shipped. A demurrer

to this counterclaim was sustained, and the court in deciding the case quoted from C. & N. W. Ry Co. v. Stein Co., 233 Fed. 716, thus:

"If a shipper may be permitted to set-off, in an action for freight earned by a carrier, claims for damages which the shipper alleges he has sustained, the court must prevent the usual right to make compromise of such suits, and must undertake the impossible task of holding the carrier to diligence and good faith in preparing and presenting its defense, in order to prevent the granting and receiving of rebates by insidious agreement between the parties with reference to the disposition of the suit. The public policy evinced by the acts of Congress relating to interstate commerce requires the denial of the right to set-off in such cases, leaving the shippers an independent action to enforce any rights that belong to them."

If the plaintiff and the defendant could not contract for a different rate than that prescribed by the schedule on file with the Interstate Commerce Commission, and defendant could not plead a just counterclaim for damages to the goods shipped, then can the plaintiff accomplish by its silence, or its act or failure to act, that which it could not do by contract? To illustrate:

Suppose defendant at Beaver Falls, Pennsylvania had entered into an agreement with plaintiff or with the initial carrier, both in good faith, and ignorant of the true rate, that the car of merchandise would be shipped to Inola, Oklahoma for an amount which afterwards turned out to be $176.72 less than the rate prescribed by the schedule then on file with the Interstate Commerce Commission; and that in pursuance of this agreement the initial carrier and connecting carriers had complied therewith, and shipped the car of merchandise from Beaver Falls, Pennsylvania to Inola, Oklahoma and that while this car was in transit defendant sold the merchandise and duly assigned the bill of lading to Stewart and McNames; and that on the arrival of this car of merchandise at Inola, Oklahoma, the carrier delivered the same to defendant's assignee, and still in

accordance with the original contract collected $176.72 less than the total rate provided by law; that thereafter there was no mention of any claim against defendant for further charges for two years, and no demand made upon the assignee, and in the meantime said assignee became insolvent; and concede that had defendant known the required rate, it would have collected said amount from the assignee at the time it sold the car of merchandise or before they became insolvent.

If these conditions had existed instead of the facts as they are in the instant case could plaintiff recover? The authorities cited, supra, answer in the negative. Then if plaintiff and defendant could not by contract relieve plaintiff of the obligation of charging, and the defendant of the obligation of paying, the lawful rate, can the same result be accomplished by the act, or the failure to act, of either? We think not. It is the plain duty of this court to follow the last ruling of the Supreme Court of the United States upon a question of the character here presented which is the construction of a federal statute; and in doing so we are following the directions of our own Supreme Court. [Haseltine v. Central National Bank, 155 Mo. 66, 56 S. W. 895.]

Damage or loss to the shipper, and good faith, are not elements to be considered in cases of this character. [Texas & Pacific Ry. Co. v. Mugg & Dryden, supra; B. & O. S. W. Ry. Co. v. New Albany B. & B. Co., 94 N. E. (Ind.) 906.]

Yazoo & Mississippi Valley Railroad Co. v. Picher Lead Co., 190 S. W. (Mo. App.) 387, cited by appellant as authority for the proposition that the defense of estoppel is available in the instant case, is not in point. There the defendant at the request of a commission company of St. Louis that had bought from it a car of lead, shipped the same from Joplin, Missouri, to one Mishler at Clarksdale, Mississippi. The shipment was over the Frisco Railroad from Joplin to Memphis and from there to its destination over the Yazoo & Mississippi Valley Railroad. The shipment was

delivered to the consignee, but, by mistake, plaintiff collected only the regular established transportation charges from Joplin to Memphis. The action was brought to recover the balance. The case was tried on an agreed state of facts and judgment below went for the defendant. On appeal the case was reversed with directions to enter judgment for plaintiff.

ROBERTSON, P. J. in the course of the opinion in the Yazoo and Mississippi Valley Railroad Company v. Picher Lead Company case used this language:

"There is no allegation or statement of facts that tend to prove waiver or estoppel, and no such defenses are urged here."

But this is far from holding that the defense of waiver or estoppel is available in cases of this character, or the character there under consideration. The expression is no more than *obiter dictum,* as there was no question of estoppel or waiver in the pleadings or in the agreed statement of facts in that case. Appellant has cited no authority holding that estoppel as a defense could be pleaded against a demand for the charges fixed by law for an interstate shipment; nor has any authority on an analogous principle been cited; nor have we found any which would justify us in so holding. The nearest approach to an authority holding in effect that estoppel will lie in cases of the character here under consideration is Yazoo & M. V. R. R. Co. v. Zemurray, 238 Fed. 789. But in that case the court expressly stated that no feature of any interstate commerce law was involved and the case was controlled by the Statute of Limitations. To hold that the carrier can do indirectly that which it cannot do directly is wholly inconsistent with the letter and the spirit of that part of the Interstate Commerce Act, and its various amendments, regulating interstate rates of common carriers. In L. & N. R. R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. Rep. 494, plaintiff sued for the difference in the price of some passenger tickets from Nashville, Tennessee, to Salt Lake City, as fixed by the Interstate

Commerce Commission and the price sold at by plaintiff. Judgment went for defendant in the State courts of Tennessee, and the case was taken to the Supreme Court of United States by writ of error. In reversing the case Mr. Justice HUGHES said:

"Under the interstate commerce act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination."

Central of Georgia Ry. Co. v. Birmingham Sand and Brick Company 64 Southern (Ala.) 202, is directly to the point. There an error was made in estimating freight on interstate shipments, and suit brought for the difference between the lawful rate, and the amount collected. The defense was facts tending to establish estoppel; as in the instant case. The court in that case held that estoppel would not lie, and in disposing of the matter used this language which we think clearly reflects the spirit of the act of Congress regulating interstate rates: "The necessary effect of all these decisions, construing and applying the Interstate Commerce Act, when considered together, is, in our opinion, that the carrier cannot, by any act, estop itself from exacting the lawful freight rate. If the carrier could so estop itself, then it would lie within the carrier's power, by purposely putting itself in a position where it could not exact the lawful rate of a shipper it desired to favor, to render nugatory one of the main designs of the act, the prevention of discrimination between shippers; and for the law to countenance the doctrine of estoppel in cases like this is for the law to

say through the courts that the carrier is estopped from doing what the statute mentioned plainly requires that it must do—collect the lawful rate in all cases, and nothing greater and nothing less, by any means or device whatsoever. We cannot escape the conclusion that Congress impliedly intended by the act mentioned to deny to consignors and consignees the defense of estoppel when sued by the carrier for the lawful rate, since such a defense is entirely inconsistent with and destructive of the purposes of the act."

It follows from the above and foregoing that the defense of estoppel in our judgment is not available in the instant case, and that the trial court was correct in sustaining plaintiff's demurrer to that portion of the answer pleading estoppel, and in sustaining the objection of plaintiff's offering to prove the facts set up in that part of its answer pleading estoppel. It is just as reasonable that the letter and spirit of the interstate commerce act regulating interstate rates could be sidestepped and avoided by pleading estoppel as in counterclaim or set-off, and in principle we can see no difference in the ultimate effect. The judgment of the trial court is therefore affirmed. *Sturgis, P. J.,* and *Farrington, J.,* concur.