MOBILE & OHIO RAILROAD COMPANY, a Corporation, Appellant, v. LACLEDE LUMBER COMPANY, a Corporation, Respondent.

St. Louis Court of Appeals. Argued and Submitted November 10, 1919.
Opinion Filed December 2, 1919.

1. **CARRIERS: Carriers of Freight: Interstate Commerce: Unlawful to Charge Less Than Published Rate.** The amount of the lawful charges for the transportation of freight in interstate commerce having been fixed by schedules of rates legally published pursuant to the act to regulate commerce and the amendments thereto (Act June 29, 1906, ch. 3591, 34 Stat. at L. 586, sec. 2), it was unlawful for the plaintiff to charge or for the consignee to pay, any less than the lawful rates; neither rebates, concessions nor other deviations from the approved and published tariff rates being allowed. (Act Feb. 19, 1903, 32 Stat. at L. ch. 708, p. 847, U. S. Comp. St. Supp. 1911, p. 1309).

2. ———: ———: ———: **Consignee Charged With Knowledge of Published Rates.** A consignee of an interstate shipment is charged with knowledge that the rate fixed in the schdule of rates filed and published under the acts of Congress is the only lawful rate.

3. ———: ———: ———: **Consignee Prima Facie Liable for Undercharge of Freight.** The consignee, and not the consignor, is primafacie liable for the payment of under charges of fieight because he has entered into a contract of shipment with the carrier.

4. ———: ———: ———: **Consignee Liable to Pay Freight Charges: No Express or Implied Promise Necessary.** There need not be an express promise on the part of the consignee to make him liable for freight charges or an implied promise arising from his acts in inducing delivery to him without payment of the charges; the mere acceptance and removal of the goods by the consignee, with knowledge that the carrier is giving up his lien for his charges, creates an obligation to pay charges beyond the amount stated.

5. ———: ———: ———: ———: **No estoppel Against Carrier.** Where the consignor has agreed to deliver goods to the consignee f. o. b. at the place of destination, and the consignee has paid freight rates for the carriage of the same less than those fixed by law, the consignee is liable for the difference between the amount paid and the amount fixed by law, and there can be no estoppel against the carrier as the acts of Congress negative any such claim; and the fact that the consignee has settled with the consignor on the lower rate and that the latter is insolvent, does not change the situation as between the former and the carrier.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. Thos. C. Hennings,* Judge.

REVERSED AND REMANDED (*with directions*).

*R. P. & C. B. Williams* for appellant.

*Carl Fox* of Counsel.

(1) The law is well settled that neither by contract nor through mistake or inadvertence can a carrier estop itself from demanding and collecting from either the consignor or consignee the balance of the lawful freight rate where it has delivered goods without charging and collecting the same in full. Union Pacific R. R. v. Am. Smelting Co., 202 Fed. 720; Illinois Central Railroad Co. v. Henderson, 226 U. S. 441, 57 L. Ed. 290;

Kansas City R. R. Co v. Carl, 227 U. S. 639, 57 L. Ed. 683; Texas R. R. Co. v. Mugg, 202 U. S. 242, 50 L. Ed. 1011; Louisville R. R. Co. v. Maxwell, 237 U. S. 94, 59 L. Ed. 853; Mo. Pac. R. R. Co. v. Schnouty, 245 U. S. 641, 52 L. Ed. 527; Bush v. Keystone Driller Co., 199 S. W. (Mo. App.) 597; Yazoo v. Picher, 190 S. W. (Mo. App.) 387; Dunn v. Southwestern R. R., 166 Mo. App. 372; Southwestern R. R. Co. v. Spring River, 169 Mo. App. 109, 154 S. W. 465; Sutton v. Railroad, 159 Mo. App. 685; Kansas City So. R. R. v. Albers, 223 U. S. 573, 57 L. Ed. 566. (2) The consignee is presumed to be the owner and is prima facie liable for the freight and is bound to take notice of the correct and legal rate, and if the carrier by mistake collects less than the legal rate, such consignee is liable for the difference and cannot claim estoppel. The following cases are directly in point: Union Pac. R. R. v. American Smelting Co., 202 Fed. 720; Central of Ga. R. R. v. Willingham & Son, 70 S. E. (Ga.) 199; Penn. R. R. Co. v. Titus, 109 N. E. (N. Y.) 857; Central of Ga. v. Birmingham, 64 So. (Ga.) 202; N. Y. & New Haven R. R. Co. v. York, 215 Mass. 36, 102 N. E. 366; Cornelius v. Central of Ga., 69 So. (Ga.) 331; Western R. R. v. Callius, 78 So. (Ala.) 833; Southern Cotton Oil Co. v. So. R. R., 147 Ga. 646, 95 S. E. 251; Southern Flour Co. v. Seaboard Air Line, 95 S. E. (Ga.) 997; New York Central R. R. Co. v. York, 230 Mass. 206, 119 N. E. 855; Chicago, M. & St. P. R. R. v. Greenberg, 139 Minn. 428, 166 N. W. 1073; Chicago, I & L. R. R. v. Monarch L. Co. 202 Ill. App. 20; Bush v. Keystone Driller Co., 199 S. W. (Mo. App.) 597.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.* for respondent.

(1) The consignor, and not the consignee, is prima facie liable for the payment of undercharges of freight, because he has entered into the contract of shipment with the carrier. Central R. R. Co .v. MacCartney, 68 N. J. L. 165; Baltimore, etc., R. R. Co. v. New Albany,

etc., Co., 48 Ind. App. 647. (2) To make the consignee liable for the freight charges, there must be an express promise on his part to pay the same or an implied promise arising from his acts in inducing delivery to him without payment of the charges. The mere acceptance and removal of the goods by the consignee with knowledge that the carrier is giving up his lien for his charges does not create an obligation to pay charges beyond the amount stated. Central R. R. Co. v. MacCartney, 68 N. J. L. 165; Hutchinson on Carriers (3 Ed.), sec. 807. (3) Where the consignor has agreed to deliver goods to the consignee f. o. b. at the place of destination, and the consignee has paid freight rates for the carriage of the same less than those fixed by law, the consignee is not liable for the differences between the amount paid and the amount fixed by law. Central of Georgia R. R. v. Southern Ferro Concrete Co., 193 Ala. 108; New York Central, etc., R. R. Co. v. Butler, 145 N. Y. S. 918.

REYNOLDS, P. J.—Plaintiff commenced its action against the defendant before a justice of the peace, filing this statement:

"Laclede Lumber Co., Dr., in account with
Mobile & Ohio Ry. Co., Cr.

"To under charge on shipment of Lumber
contained in car No. 132,927, Southern,
delivered to Laclede Lumber Co. on
December 5, 1912, by Terminal Railroad Ass'n, on which there was a
claim of freight charges (including
demurrage of $17), . . . . . . . . . $ 98.44
The proper amount to be collected being, 108.44
—————
$ 10.00"

From a judgment there against plaintiff an appeal was taken to the circuit court, where the cause was tried *de novo* by the court, a jury being waived, on the following stipulation, duly signed by counsel:

"That on the 5th day of November, 1912, the Brownlee Lumber Company of Utica, Mississippi, shipped a car of lumber to the Funk Lumber Company at Cairo, Illinois—notify C. G. Gauss Lumber Company.

"Shipment arrived in Cairo, November 8, 1912, and said C. G. Gauss Lumber Company was duly notified and the shipment remained at that point until November 30, 1912, during which time demurrage charges accrued. On the latter date the C. G. Gauss Lumber Company sold the car of lumber to the defendant, f. o. b. St. Louis, and reconsigned the shipment from Cairo, Illinois, to the Laclede Lumber Comapny of St. Louis, by the Mobile & Ohio Railroad Company. The latter railroad company delivered the car of lumber to the Terminal Railroad Association, which company made delivery to the Laclede Lumber Company on December 5, 1912; and before delivery and as a condition precedent to delivery, the Terminal Railroad Association required the payment of and collected from said company $98.44 on account of freight and demurrage charges against the car while the same remained on the track at Cairo, Illinois, before being reconsigned to St. Louis.

"The proper amount of freight and other charges which should have been collected was $108.44, in accordance with the lawfully established tariff of freight and other charges duly filed with the Interstate Commerce Commission, and published by the plaintiff in accordance with the law and the rules of the Interstate Commerce Commission.

"By mistake of a clerk of the plaintiff, the bill for the freight and other charges was made out as $98.44 instead of for $108.44.

"Several months after the car had been delivered to the Laclede Lumber Company, the error in the freight bill was discovered by plaintiff and defendant was requested by plaintiff to pay the $10 additional, being the $10 sued for in this action; and defendant declined to pay the amount, contending that it was not liable for the same and that it had made payment in full

to the C. G. Gauss Lumber Company for the car of lumber.

"At the time the error in the freight bill was discovered, the C. G. Gauss Lumber Company was in liquidation.

"The freight bill paid by defendant is attached hereto as a part hereof."

This freight bill does not appear to have been in evidence and is not before us.

There was a judgment for defendant, from which plaintiff has duly appealed.

The errors assigned are to the ruling of the court in finding for defendant on the agreed statement, and in overruling plaintiff's motion for a new trial.

With the agreed statement of facts before us, and it was solely upon this that the case was heard and determined in the trial court, there can be no doubt but that plaintiff, appellant here, is entitled to recover the ten dollars for which it brought this action, that amount being so much less than the tariff charges as filed and set forth in the tariff on file by the Interstate Commerce Commission and duly published.

The amount of the lawful charges for the transportation of freight in interstate commerce is fixed by schedules of rates legally published pursuant to the act to regulate commerce and the amendments thereto (Act June 29, 1906, c. 3591, 34 Stat. 586, sec. 2); and it was unlawful for the plaintiff to charge or for the consignee to pay, any less that the lawful rate: neither rebates, concessions, or other deviations from the approved and published tariff rates being allowed. The rate fixed in the schedule of rates filed and published under the Acts of Congress, is the only lawful rate. [See Act Feb. 19, 1903, 32 Stat., c. 708, p. 847 (U. S. Comp. St. Supp. 1911, p. 1309).] The consignee knew this, for it is charged with knowledge of the law.

"In every case of this character, in which there is no express contract by the consignee to pay the transportation charges, the question is whether or not the

facts of the case raise the implication of such a contract. The law is well settled that such a contract is implied from the acceptance by a consignee or consignees of goods shipped under a bill of lading which contains the stipulation, the consignee or consignees paying freight, or any similar provision.'' (Citing cases.)

''The reason for this rule is that the consignee accepts the goods with knowledge that the carrier looks to him for payment of the transportation charges and waives his lien for them by delivery in reliance upon the consignee's implied promise, evidenced by his acceptance of the goods, that he will pay the charges. But this reason exists in all its force, in the absence of a bill of lading, wherever the consignee accepts the goods knowing that the carrier looks to him for payment, waives the lien, and delivers the goods in the faith that he will pay the charges. And as there is in such cases the same reason for the implication of a promise by the consignee to pay these charges as in cases where bills of lading exist, the same implication ought to and does arise.'' [Union Pacific R. Co. v. American Smelting & Refining Co., 121 C. C. A. 182, l. c. 185.]

So it has been held in our State, as see Dunne & Grace v. Southwestern Ry. Co., 166 Mo. App. 372, 148 S. W. 997; Mott Store Co., v. St. Louis & S. F. Ry. Co., 184 Mo. App. 50, 168 S. W. 322; Yazoo & M. V. R. Co. v. Picher Lead Co., not yet officially reported but see 190 S. W. 387; Bush, Receiver, v. Keystone Driller Co., 199 Mo. App. 152, 199 S. W. 597; Cicardi Bros. Fruit & Produce Co. v. Pennsylvania Co., not yet officially reported but see 213 S. W. 531.

Learned counsel for respondent argue that the consignor and not the consignee is prima facie liable for the payment of under charges of freight because he has entered into a contract of shipment with the carrier. In support of this counsel cite Central R. R. Company of New Jersey v. MacCartney, 68 N. J. L. 165; Baltimore & Ohio Southwestern Ry. Co. v. New Albany

Box & Basket Co., 48 Ind. App. 647. It was said by Judge SANBORN, in Union Pacific Railroad Co. v. American Smelting & Refining Co., supra, l. c. 186, that the New Jersey decision is out·of line and not in accord with the facts in judgment in the Union Pacific Case, supra, and so it may be said here. We do not think that the decision quoted from the Indiana Appellate Court sustains the contention of learned counsel for respondent; as we read and understand it, the reasoning of it is against him, although in that case the action was against the consignor and not, as here, the consignee. But the same rule applies to both, as the cases we have cited hold.

Those same learned counsel further argue that to make the consignee liable for the freight charges, there must be an express promise on his part to pay the same or an implied promise arising from his acts in inducing delivery to him without payment of the charges; that the mere acceptance and removal of the goods by the consignee, with knowledge that the carrier is giving up his lien for his charges, does not create an obligation to pay charges beyond the amount stated. Central Railroad Company of New Jersey v. MacCartney, supra, and Hutchinson on Carriers (3 Ed.), sec. 807, are cited in support of this. We do not understand that to be the law and it is thoroughly disposed of by the cases we have cited from our own courts and the United States Circuit Court of Appeals.

The third and final proposition made by learned counsel for respondent, is that where the consignor has agreed to deliver goods to the consignee f. o. b. at the place of destination, and the consignee has paid freight rates for the carrage of the same less than those fixed by law, the consignee is not liable for the difference between the amount paid and the amount fixed by law. In other words, an estoppel is invoked. In support of this counsel cite Central of Georgia Ry. Co. v. Southern Ferro Concrete Co., 193 Ala. 108, and New York Central & H. R. R. Co., v. Butler, 145 N. Y. Supp. 918. Whether

those cases support the contention of counsel, it is not necessary to determine, for the Supreme Court of Alabama, in the subsequent case of Western Railway of Alabama v. Collins, not officially reported but see 78 So. 833, held that where the agent of an interstate carrier, accepting goods under bill of lading requiring payment of freight by the owner or consignee, inadvertently charged a lower rate than that on file with the Interstate Commerce Commission, the carrier could recover the amount of the deficit from the consignee. In Pennsylvania R. R. Co. v. Titus, 216 N. Y. 17, 109 N. E. 857, the Court of Appeals of New York held that the Interstate Commerce Acts makes "freight rates on railroads engaged in interstate commerce arbitrary, immutable by the agreement, mistake or artifice of the parties and not to be deviated from. Payment of part of the correct amount by the consignee does not fulfill or release performance of his contract."

There can be no estoppel against the carrier here: the Acts of Congrss negative any such claim. Bush, Receiver, v. Keystone Driller Co., supra, and cases there cited. That the consignee has settled with the consignor on the lower rate and that the latter is insolvent, does not change the situation as between the former and the carrier.

It follows that the finding of the circuit court should have been for the plaintiff, appellant here, on the agreed statement of facts.

The judgment is reversed and the cause remanded with directions to the trial court to enter up judgment in favor of plaintiff on the agreed statement for the proper amount, ten dollars and costs.

*Allen* and *Becker, JJ.,* concur.