MOBILE & OHIO RAILROAD COMPANY, a Corporation, Appellant, v. SOUTHERN SAW MILL COMPANY, a Corporation, Respondent.

St. Louis Court of Appeals. Opinion Filed May 8, 1923.

1. **CARRIERS: Carriers of Freight: Interstate Commerce Act: Tariffs: Legal Rate is Filed Rate: Duty of Carrier to Charge and Collect Filed Rate.** The legal rate is the filed rate, and it is the duty of the carrier to charge and collect the rate precisely as the same is contained in the tariffs on file with the Interstate Commerce Commission, and this is so even though such rate be excessive, unreasonable and unlawful.

2. **———: ———: ———: Schedules: Legally Filed and Published: Effective Prospectively When Notice Required by Statute had Lapsed.** Whether filed tariff schedules of rates be called a reissue or termed a new rate or tariff were effective retroactively is not material where it affirmatively appears that when the shipments upon which the rate sought to be applied by the carrier were made, such schedules containing such rate were on file and had been duly published for the requisite period of time as set out in the Interstate Commerce Commission's order, and effective prospectively when notice required by statute had lapsed.

3. ——: ——: ——: ——: ——: Carrier Required to Collect Rate Interstate Commerce Commission Permitted to Remain Legally on File and Published. Where a sixteen cent tariff rate on cypress lumber brought on file with the Interstate Commerce Commission, was permitted by the Commission to remain the legally filed and published rate, it was the duty of the plaintiff carrier, being the delivering carrier, to charge that rate so long as same was actually on file and published at the time the freight moved, irrespective of a dispute between the carrier and the shipper as to whteher the Interstate Commerce Commission had held the rate unreasonable; the sixteen-cent rate being on file at the time the present shipments were made, and therefore the legal rate in force at that time.

4. INTERSTATE COMMERCE ACT: Order of Interstate Commerce Commission Directing Carrier to Cancel Rate: Not Self-Executing. An order of the Interstate Commerce Commission under Interstate Commerce Act, Section 15 (U. S. Comp. St., sec. 8583) holding a tariff rate to be unreasonable and cancelling same has not the effect of self-execution or of *ipso facto* cancelling such rate; but if the order is not promptly obeyed by changing the tariff as provided in section 6 (section 8569) then that tariff stands and is to be conclusively presumed to be the legal rate, and any departure therefrom is made an offense, the Commission having the power to compel obedience by proceeding under 4 Fed. Stat. Ann., section 16 (K), p. 488 (U. S. Comp. St., sec. 8584).

5. CARRIERS: Carriers of Freight: Interstate Commerce Act: Carrier Charging Rate Commission Held Excessive: Shipper or Person Injured May Recovery. If a carrier fails to desist from charging a rate which the Interstate Commerce Commission has held to be excessive, the shipper, or person injured may recover.

6. INTERSTATE COMMERCE ACT: Interstate Commerce Commission Has Power to Declare Rate Unreasonable. The Interstate Commerce Commission has power to declare a rate unreasonable.

7. CARRIERS: Carriers of Freight: Interstate Commerce Act: Tariffs: Change of Unreasonable Rate: Method. If a tariff rate was unreasonable, the only way it could be changed so that it would relieve the carrier from the obligation of applying such rate was to require the carrier, under Interstate Commerce Act, section 6 (U. S. Comp. St., sec. 8569), to print new schedules showing the changes or by indicating upon schedules already in force that such changes had been made, but until this is done the carrier must charge such rate, notwithstanding that same is excessive and discriminatory, and may entail a hardship.

8. ——: ——: ——: ——: ——: Estoppel: Estoppel Cannot be Invoked Against Interstate Commerce Act. An estoppel cannot be invoked against the Interstate Commerce Act, however harsh the consequences.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Franklin Ferriss,* Judge.

REVERSED AND REMANDED *(with directions.)*

*R. P. & C. B. Williams* for appellant. *C. T. Prince,* of Counsel.

(1) The legal rate is the filed rate, and it is the duty of the carrier to charge and actually collect the rate on file, even though such rate be excessive, unreasonable and unlawful. Pittsburg v. Fink, 250 U. S. 577; L. & N. Railroad Co. v. Maxwell, 237 U. S. 94; Dayton Coal Co. v. C. N. & T. P. Railroad Co., 239 U. S. 446; Pennsylvania R. R. Co. v. International Coal Mining Co., 230 U. S. 185; Armour Packing Co. v. U. S., 209 U. S. 56; Mitchell Coal Co. v. Pennsylvania R. R. Co., 230 U. S. 247; Morrisdale Coal Co. v. Pennsylvania R. R. Co., 230 U. S. 304; Interstate Commerce Commission v. L. & N. R. R. Co., 227 U. S. 88; Boston v. Hooker, 233 U. S. 97, 58 L. Ed. 868; Kansas City v. Carl, 227 U. S. 638; Gulf R. R. Co. v. Hefley, 158 U. S. 99; Kansas City Southern v. Albers Com. Co., 223 U. S. 573; Arkansas Fuel Co. v. C. M. & St. P. R. R. Co., 16 Interstate Commerce Commission 95; Crescent v. Clear R. R. Co., 24 I. C. C. 149; Mobile & Ohio R. R. Co. v. Laclede Lumber Co., 202 Mo. App. 630; Cicardi Bros. v. Pennsylvania R. R. Co., 201 Mo. App. 609; Busch v. Driller Co., 199 Mo. App. 152; Yazoo & Mississippi R. R. Co. v. Picher Lead Co., 190 S. W. 387; Chicago R. R. Co. v. Lightfoot, 232 S. W. 176; Ill. Central v. Henderson, 226 U. S. 441, 57 L. Ed. 290. (2) It was the absolute duty of the plaintiff, the delivering carrier, to collect the rate on file with the interstate Commerce Commission, else it would have been

liable to a penalty and prosecution under the act. Robinson v. Baltimore, 222 U. S. 504; 4 Fed. Stat. Ann. (2 Ed.), sec. 1 (B), p. 558; U. S. v. New York Central, 212 U. S. 514. (3) The carrier, the Mobile & Ohio Railroad Company, was the delivering line and had nothing to do with filing or putting into effect the rate of sixteen cents on cypress lumber and its duty, in making the charge and collecting the freight was simply to examine the schedule of rates on file and to apply such filed rate irrespective of whether it was reasonable or unreasonable, and the remedy of the shipper, if he paid an unreasonable rate, was to seek reparation before the Commission in the manner prescribed by section 15 of the Interstate Commerce Acts. Pennsylvania R. R. Co. v. International Coal Co., 230 U. S. 185; Pennsylvania R. R. Co. v. Clark Coal Co., 238 U. S. 456; Loomis v. Lehigh, 240 U. S. 43; Robinson v. Baltimore, 222 U. S. 504. Rates once established in the manner provided by the statute by filing and publication shall not be changed except in the manner provided by the statute. Section 6 of the act provides that such rates shall be changed "by printing new schedules or shall be plainly indicated upon the schedules in force at the time and kept open to public inspection." 4 Fed. Statutes Ann. (2 Ed.), sec. 6 (C); U. S. v. Miller, 223 U. S 602; Robinson v. Baltimore, 222 U. S. 504. (4) An order of the Interstate Commerce Commission directing a carrier to cancel a rate does not have the effect of annuling such rate. The Interstate Commerce Act simply giving the Commission power to make orders, and if such orders are not obeyed the remedy for compelling obedience is specifically prescribed in section 16 of the act. The filed rate must be charg'd and actually collected. It shall be conclusively deemed to be the legal rate, and any departure therefrom "shall be an offense." 4 Fed. Stat. Ann. (2 Ed.), sec. 16 (K), p. 488; 4 Fed. Stat. Ann. (2 Ed.), 1 (B), p. 558; Western Ry. Co. v. Penn. Ry. Co., 137 Fed. 343, affirmed 208 U. S. 208. (5) The court erred in excluding plaintiff's Exhibits B and C; Exhibit

B being a letter written by the carrier to the Interstate Commerce Commission requesting a ruling as to what rate should be applied to the shipments in question, and Exhibit C being the reply of the secretary of the Commission, stating that the rate of sixteen cents was the proper rate. These exhibits were admissible in evidence as an investigation and an informal ruling of the Interstate Commerce Commission under the rules of said Commission, and the law applicable thereto. See Daish on Procedure in Interstate Commerce cases, section 73; Texas & Pacific R. R. Co. v. American Tie Co., 234 U. S. 138. (6) Under the United States Statutes the carrier has the primary right to fix rates, and so long as they are acquiesced in by the Commission, the carrier and the shipper are alike bound to treat them as lawful. Morrisdale Coal Co. v. Pennsylvania R. R. Co., 230 U. S. 304; Interstate Commerce Commission v. L. & N. R. R. Co., 227 U. S. 88; Baltimore v. Pitcairn, 215 U. S. 481; Pittsburgh Ry. Co. v. Fink, 250 U. S. 577. (7) The carriers distinctly refer to I. & S. Docket No. 184 as authority for filing the schedule containing the sixteen-cent rate. If the order of the Commission, in I. & S. Docket No. 184, condemned a rate of sixteen cents on cypress lumber, why did the carrier specifically cite this order in filing the rate as a re-issue, and why did the Commission, with full knowledge in the premises, permit the schedule to be filed and to remain on file, carrying the sixteen-cent tariff? (8) The trial court was not possessed of jurisdiction to consider or determine that the duly filed rate was void, or for any reason should not be applied. Texas Ry. Co. v. Oberline Co., 204 U. S. 426; Baltimore v. U. S., 215 U. S. 481; Robinson v. Baltimore, 222 U. S. 506; Mitchell Coal Co v. Penn. Ry., 230 U. S. 247; Loomis v. Lehigh Valley Ry., 240 U. S. 42, 43; Director General v. Viscose Co., 254 U. S. 498. (9) Penn. Ry. Co. v. International Coal Co., 230 U. S. 185, says: "The statutes require the carrier to abide absolutely by the tariff. If, as a fact, the rates were unreasonable, the shipper was nevertheless

bound to pay and the carrier to retain what had been paid, leaving, however, to the former the right to apply to the Commission for reparation.''

*John F. Gillespie* for respondent.

(1) These being interstate shipments, the Federal statutes and decisions of the Federal courts control. Adams v. Croninger, 226 U. S. 491. (2) Unreasonable charges for carriage of freight are prohibited, unlawful and void (par. 3, sec. 1, Interstate Commerce Act [sec. 8563, p. 9065, West's Ann. U. S. St. 1916]). (3) The Interstate Commerce Commission is the proper tribunal to determine reasonableness of rates and its findings are prima facie correct. Ill. Cent. R. R. Co. v. I. C. C., 206 U. S. 441; I. C. C. v. U. P. R. R., 222 U. S. 541; I. C. C. v. L. & N. R. R. Co., 235 U. S. 314; L. & N. R. R. Co. v. U. S., 245 U. S. 463; Morgan's L. & T. R. R. & S. S. Co. v. Isaac Joseph Iron Co., 243 Fed. 149; Pars. 1 and 2, sec. 15, Interstate Commerce Act; Sec. 8583, p. 9198, West's Ann. U. S. St. 1916. (4) The finding by the Interstate Commerce Commission that a rate or proposed rate is unreasonable cancels the rate and makes it unlawful and void. Southern Cotton Oil Co. v. Central of Georgia Ry. Co., 228 Fed. 335; American Sugar Ref. Co. v. D. L. & W. Ry. Co., 200 Fed. 652, 207 Fed. 733; L. & N. R. R. Co. v. Maxwell, 237 U. S. 94; I. C. C. v. U. P. R R. Co., 222 U. S. 541; I. C. C. v. C. R. I. & P. Ry. Co., 218 U. S. 88; I. C. C. v. L. & N. R. R. Co., 227 U. S. 88; Morgan Co. v. G. N. R. R. Co., 263 Fed. 611; Par. 1, 2, Sec. 15, Interstate Commerce Act (Sec. 8583, p. 9198, West's Ann. U. S. St. 1916); Secs. 12, 16, Interstate Commerce Act; O'Keefe v. United States, 240 U. S. 294; Daish on Procedure in Interstate Commerce cases, p. 235. (5) The plaintiff concurred in the publication of the tariffs and supplements, by filing a concurrence with the Interstate Commerce Commission and is responsible for it. But its concurrence or lack of it cannot affect the validity or invalidity of the rates (6) The plaintiff acquiesced

in the ruling of the Commission that the sixteen-cent rate was unreasonable, by publishing a new tariff (No. 610C, I. C. C. 2746), naming a fourteen-cent rate. (7) Supplement No. 1 to Tariff No. 610C, I. C. C. 2746, naming a sixteen-cent rate, did not purport to be issued in contravention of the Commission's order, but in compliance with it, and was called a "reissue," not a new rate (Plaintiff's Points and Authorities, Point 7). There could not be a "reissue" of a rate that had never been in effect, and which the Commission held was unreasonable and therefore could not take effect. (8) Neither Supplement No. 1 nor Supplement No. 5, to Tariff No. 610, could take effect as new rates, because they purported to be effective retroactively to February 1, 1915, were not issued until February 23, 1915, and April 17, 1915, respectively, and were not published thirty days before the named effective date as required by section 6 of the Interstate Commerce Act. Par. 3, sec. 6, Interstate Commerce Act (Sec. 8569, p. 9127, West's Ann. U. S. St. 1916). (9) Supplements Nos. 1 and 5 could not take effect as "reissues" because they were not in accordance with the Commission's order, which held the sixteen-cent rate void and ordered it canceled. The order of the Commission permitting the filing of new schedules within less than the statutory time of thirty days only authorized schedules in compliance with its order to continue the fourteen-cent rate in effect. Par. 3, sec. 6, Interstate Commerce Act (Sec. 8569, p. 9127, West's Ann. U. S. St. 1916). (10) The order of the Commission left the prior fourteen-cent rate in effect, and the attempted "reissues" did not change it. Pars. 1 and 2, sec. 15, Interstate Commerce Act (Sec. 8583, p. 9198, West's Ann. U. S. St. 1916); Southern Cotton Oil Co. v. Central of Georgia Ry. Co., 228 Fed. 335; American Sugar Ref. Co. v. D. L. & W. Ry. Co., 200 Fed. 652, 207 Fed. 733; L. & N. R. R. Co. v. Maxwell, 237 U. S. 94. (11) The first exception stated in the order of the Commission, and upon which plaintiff bases its claim to charge sixteen

cents, applies only to hardwood lumber, while cypress, the subject of the shipments in question, is a soft wood. Finding of Interstate Commerce Commission. (12) The letter from the secretary of the Interstate Commerce Commission is inadmissible in evidence because hearsay and a conclusion. (13) The statement in the certificate of the secretary of the Interstate Commerce Commission that certain rates were "in force" between certain dates is a conclusion of law and inadmissible in evidence. Shelton v. Railroad, 131 Mo. App. 560. (14) Defendant could not enjoin the carrier, because: (a) The carrier did not attempt to charge sixteen cents when it collected its charges. (b) Only the Interstate Commerce Commission can maintain an injunction suit to restrain the collection of an unlawful rate. (c) The Commission could not enjoin here because the "reissues" of the sixteen-cent rate were void and could not take effect. The rate which they purported to re-establish had never been established, hence could not be re-established. It had never been in effect and the Commission held that it could not be put in effect.

DAUES, J.—Plaintiff sues to recover certain undercharges amounting to $843 on ninety-four shipments of lumber from points in the State of Louisiana to Cairo, Illinois. The cause was tried by the court, a jury having been waived, and resulted in a judgment in favor of defendant, from which plaintiff appeals.

No point is made on the pleadings and little or no dispute arises on the facts. The undercharges claimed amount to two cents per hundredweight on the ninety-four carloads of cypress lumber; the shipments were made between March 1, 1915, and August 31, 1915, inclusive. The route was over the Louisiana Railway & Navigation Company, the initial line, to New Orleans, Louisiant; the New Orleans & Northeastern Railway Company from New Orleans to Meridian, Mississippi, and the plaintiff railroad company, the delivering line, from Meridian to the destination point, Cairo, Illinois.

The defendant company was both consignor and consignee. At the time the shipments were made, plaintiff and defendant's agent, it appears, supposed that fourteen cents per hundredweight was the legal rate. Bills were computed upon that rate and were paid upon that basis. Plaintiff afterwards made a demand for an alleged undercharge, claiming that a mistake had been made in applying a rate of fourteen cents instead of a sixteen cent rate on said shipments, and this suit is for the difference between those rates, or for two cents per hundredweight on said shipments.

The record discloses that Joint Freight Tariff No. 610-B; I. C. C. 2679, effective September 19, 1910, established a rate of fourteen cents per hundredweight on cypress lumber over this route. By supplement to said tariff, effective May 1, 1911, provision was again made for fourteen cents, and by Supplement No. 18, item No. 306-C, to said tariff, purporting to become effective January 1, 1913, this rate of fourteen cents was advanced to sixteen cents. The Interstate Commerce Commission suspended this advance in rates from time to time, the last suspension terminating on February 1, 1915. This suspension by the Interstate Commerce Commission was for the purpose of investigating the reasonableness of said proposed advance in rates. On January 12, 1915, the Commerce Commission made its findings of fact and rendered its decision in the case. The decision involves many items and leaves it a debatable question whether the proposed sixteen-cent rate on cypress lumber was held to be unreasonable. The order was to the effect that the carriers were to cancel on or before February 23, 1915, such rates as were thus found to be unreasonable. We need not here analyze the opinion to determine whether the item covering cypress lumber was or was not included as being unreasonable. The decision is termed Investigaion and Suspension Docket No. 184, submitted October 21, 1914, decided January 12, 1915. Under this order the carriers were to file a new tariff upon five days' filing

and posting of rates instead of thirty days as required by law in the absence of an order of the Commission.

On January 26, 1915, the carriers filed Freight Tariff No. 610-C, I. C. C. 2746. This tariff applied a rate of fourteen cents on cypress lumber and was to become effective March 1, 1915. However, prior to said effective date (March 1, 1915) the carriers filed Supplement No. 1 February 23, 1915, which was to become retroactively effective February 1, 1915. In this supplement the rate on cypress lumber was restated to be sixteen cents. This new rate of sixteen cents was termed a "reissue," and purported to be issued "under the authority of the Interstate Commerce Commission's order of January 12, 1915, in the above-mentioned docket." Thereafter tariff Supplement No. 5 was filed to become effective May 25, 1915, which also promulgated a sixteen-cent rate as a "reissue" of the rate of sixteen cents. The rate in this supplement on cypress lumber to Cairo was made effective retroactively from February 1, 1915.

The plaintiff was the delivering line and did not file or put into effect the said sixteen-cent rate on cypress lumber. The plaintiff seeks to collect the freight as per schedule of rates filed by the initial carrier covering the shipments. The reason given by plaintiff that the sixteen-cent rate was not originally charged, as already indicated, is that a clerk of the plaintiff made the mistake, and that the auditor's office afterwards discovered that the amount collected did not correspond to the tariff rate on file with the Interstate Commerce Commission. Plaintiff then demanded the payment on the rate on file with the Interstate Commerce Commission. After the dispute arose between the railroad and the shipper as to whether fourteen cents or sixteen cents was the legal rate, plaintiff wrote to the Interstate Commerce Commission asking advice on the subject, and this letter was replied to by the secretary of the Commission, in which letter the secretary stated that the sixteen-cent rate applied to these shipments. This correspondence was finally excluded by the

trial court, and this ruling forms the ground of one of appellant's assignments of error.

Appellant urges fourteen assignments of error for our consideration. However, they present but two questions: First, did the court err in ruling and deciding that the order of the Interstate Commerce Commission (Investigation and Suspension Docket No. 184) annulled the rate of sixteen cents on cypress lumber filed by the initial carriers subsequent to said order of the Commission; and, second, did the court err in excluding plaintiff's exhibits, being correspondence between plaintiff's general freight agent and the secretary of the Commission with reference to the question of the proper and legal rate? All other assignments will come within a discussion of the above.

The shipment was interstate, and not only is the Interstate Commerce Commission the proper tribunal to determine the reasonableness of such rates, but we must look to the decisions and statutes of the United States to control our views wherever we find expression or light from that source.

We begin with the thoroughly settled rule that the legal rate is the *filed* rate, and it is the duty of the carrier to charge and collect the rate precisely as same is contained in the tariffs on file with the Interstate Commerce Commission. And this is so even though such rate be excessive, unreasonable and unlawful. [Pittsburg v. Fink, 250 U. S. 577; L. & N. Railroad Co. v. Maxwell, 237 U. S. 94; Dayton Coal Co. v. C. N. & T. P. Railroad Co., 239 U. S. 446; Pennsylvania R. R. Co. v. International Coal Mining Co., 230 U. S. 185; Armour Packing Co. v. U. S., 209 U. S. 56; Crescent v. Clear R. R. Co., 24 I. C. C. 149; Mobile & Ohio R. R. Co. v. Laclede Lumber Co., 202 Mo. App. 630, 216 S. W. 798; Cicardi Bros. v. Pennsylvania R. R. Co., 201 Mo. App. 609, 213 S. W. 531; Bush v. Driller Co., 199 Mo. App. 152, 199 S. W. 597.]

Supplements Nos. 1 and 5 were properly filed with the Interstate Commerce Commission; these supplements

or tariffs provided a sixteen-cent rate on cypress lumber over this route. The defendant insists, however, that these supplements were not properly filed, in that same sought to become retroactive; the act to regulate commerce requires that they should be filed upon thirty days' notice except where otherwise ordered by the Commission. And it is further contended that these tariffs or supplements never became effective because they were in direct contravention of the Commission's order, I. & S. Docket No. 184. There are other objections made, but these in the main cover same.

It will be observed that Supplement No. 1 and Supplement No. 2, specifying the sixteen-cent rate, were termed "reissues" by the carriers, and some point is made by the defendant because of such designation of the tariffs by the carriers. We are unable to find that any distinction can be made between a filed schedule of rates, whether same be called a reissue or whether same is simply termed a new rate or tariff. Nor are we able to find any authority for treating these schedules carrying the sixteen-cent rate on cypress lumber as void and of no effect simply because they were made effective retroactively, when it affirmatively appears that when these shipments upon which the sixteen-cent rate is sought to be applied were made, such schedules containing such sixteen-cent rate were duly published for the requisite period of time as set out by the Commission's order. The tariff in any event was effective prospectively when notice required by statute had lapsed. Assuming that defendant correctly interpreted the order in I. & S. Docket No. 184 to reduce the sixteen-cent rate on cypress lumber and to hold said sixteen-cent rate to be unreasonable, it still remains that by the supplements the rate of sixteen cents was on file at the time the shipments moved.

We need not decide whether the Commission's order in fact condemned the rate on cypress lumber. We will proceed upon the theory that the Commission did intend to reduce same. The sixteen-cent rate brought

on file with the Commission by the supplements was permitted by the Commission to remain the legally filed and published rate, therefore it was the duty, as we understand the decisions, whatever interpretation may be given to the order in I. & S. Docket No. 184, of the plaintiff carrier, being the delivering carrier, to charge the rate so long as same was actually on file and published at the time the freight moved. In Pittsburg v. Fink, 250 U. S. 577, this rule is firmly established by the Supreme Court of the United States.

In Louisville & Nashville Railroad Co. v. Maxwell, 237 U. S. 94, it is said at page 97:

"Under the Interstate Commerce Act the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permited upon any pretext. Shippers and travelers are charged with notice of it, and they, as well as the carriers, must abide by it unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of Interstate Commerce in order to prevent unjust discrimination." [See also: Dayton Coal Co. v. Railroad Co., 239 U. S. 444.]

At best, there was a dispute between the carrier and the shipper as to whether the Commerce Commission had held the rate of sixteen cents on cypress lumber to be unreasonable. Nowithstanding that, the sixteen-cent rate was on file at the time the present shipments were made and was therefore the legal rate in force at that time. We must bear in mind that the rate put into effect by Supplement No. 1 and Supplement No. 5 has never been attacked and has never been suspended either on the Commission's own motion or upon complaint, and this is the rate which the Commission recognized and which must be recognized by the carriers. In the certified statement of the secretary of the Commission as to the rates

212 M. A.—9

on file obtaining on cypress lumber at the time the present shipments were made, said rate of sixteen cents appears.

But the respondent says, proceeding upon the theory that the Commission by its order held the sixteen-cent rate to be excessive, that the carrier could not subsequently and immediately thereafter refile a freight rate which was so held to be excessive, and, further, that the order of the Interstate Commerce Commission directing the carrier to cancel such sixteen-cent rate has the effect of annulling such rate. To this we cannot agree. It seems to be the rule that an order of the Interstate Commerce Commission directing the carrier to cancel a rate does not have the effect of annulling such rate. The Commerce Act gives the Commission power to make orders, and if such orders are not obeyed the law points out a method for compelling obedience thereto, and this is specifically prescribed in section 16 of the Act. So long as the rate is on file it is the duty of the delivering carrier to actually charge and collect 'the rate on file. Such rate is to be conclusively presumed to be the legal rate, and any departure therefrom is made an offense. [4 Fed. Stat. Ann. (2 Ed.), sec. 16 (K), p. 488; 4 Fed. Stat. Ann (2 Ed), 1 (B), p. 558; Western N. Y. Ry. Co. v. Pennsylvania Refining Co., 137 Fed. 343, 208 U. S. 208.]

As is said in the case of American Sugar Refining Co. v. Delaware L. & W. R. Co., 207 Fed. 733, l. c. 739:

"When such schedules are once filed with the Commission by its consent . . . they may not in any respect be changed, altered or modified except in the manner prescribed by the act. Until so changed every shipper delivers his goods for transportation to the carrier subject to the terms imposed by such schedules, and until so changed the carrier is under a contractual obligation to abide by them."

Respondent relies upon this case. However, as we read same it appears to be a strong authority for the proposition that the rate cannot be changed under the

Commerce Act except by filing a new tariff. That is to say, the carrier might of its own motion cancel a rate by filing a new schedule, or the Commission may cause the carrier to desist from charging a certain rate under section 15 of the Act. We quite agree with the plaintiff that the latter does not mean that the order of the Commission holding a tariff to be unreasonable and cancelling same has the effect of self-execution, or *ipso facto* cancelling such rate. If the order of the Commission is not promptly obeyed by changing the tariff as provided in section 6, then, as we understand these cases, that tariff stands and must be applied until something else is done to enforce the order. The Commission has the power to compel obedience by proceeding under 4 Fed. Stat. Ann., sec. 16, (K), p. 488, and we cannot be persuaded to believe, after reading the authorities, that such orders are self-executing. [Western N. Y. Ry. Co. v. Pennsylvania Refining Co., 137 Fed. 343, 208 U. S. 208.] [See also: American Sugar & Refining Co. v. Delaware L. & W. R. Co., 207 Fed. 742; Baltimore & Ohio R. Co. v. Robinson, 222 U. S. 506.] The shipper, as we have said, is not without remedy, and if the carrier fails to desist from charging a rate which the Commission has held to be excessive, the person injured may recover. As said in Baltimore & Ohio R. Co. v. Robinson, supra, (l. c. 509), the carrier may be ordered "to make reparation for any injury found to have been done. Provision was also made for enforcement of the order for reparation by action in the circuit court of the United States if the carrier failed to comply with it."

Now, as to the authorities from our own State. In the case of Mobile & Ohio R. Co. v. Laclede Lumber Co., 202 Mo. App. 630, 216 S. W. 798, this court held that although a mistake is made by a clerk of the railroad company in making out freight charges, and a rate is charged lower than that contained in the filed tariff, the railroad company, notwithstanding such mistake, can recover the difference in the rate so as to comply with the law in charging the exact amount contained in the rate on file. To the same effect is the case of Bush v. Keystone Driller Co., 199 Mo. App. 152, 199 S. W. 597. Like-

wise, in Cicardi Bros. v. Pennsylvania R. R. Co., 201 Mo. App. 609, l. c. 624, 213 S. W. 531, we held that the rates specified in the published schedules must be charged by the railroad. And to the same effect is the recent case of C. & E. I. R. Co. v. Lightfoot, 232 S. W. 176. All these cases also hold that the defense of estoppel cannot be set up in a suit by a consignor for such unpaid freight.

We have concluded that the sixteen-cent rate was the filed rate at the time of the shipments, and until suspended by the Commission or otherwise lawfully arrested same was the legal rate and the only one which plaintiff could charge or collect. As pointed out above, section 6 of the Commerce Act provides that "changes in rates shall be shown by printing new schedules, or shall be plainly indicated upon the schedules in force at the time and kept open to public inspection."

Now, the Commission has the power to declare a rate unreasonable. It is a debatable question whether this sixteen-cent rate was ever declared unreasonable, but assuming that it was, the only way that it could be changed so as to relieve the carrier from the obligation of applying such rate was to require the carrier to print new schedules showing the changes, or by indicating upon schedules already in force that such changes had been made. And until this is done the plaintiff must charge such rate, notwithstanding that same is excessive and discriminatory. The enforcement of the statute may entail a hardship yet it is the law, and it is also the law that an estoppel cannot be invoked against the act however harsh the consequences. In Pittsburg v. Fink, supra, our highest court so held.

We are constrained to hold that the judgment herein should be reversed and the cause remanded with directions to the trial court to enter a judgment for plaintiff for the amount sued for in the petition, with interest. It is so ordered. *Allen, P. J.,* and *Becker, J.,* concur.