National Starch and Chemical Corporation, Plaintiff-Appellee, v. McNamara Motor Express, Inc., Defendant-Appellant.

**Gen. No. 48,847.**

First District, First Division.

April 8, 1963.

Rugen, Ligtenberg & Goebel, of Chicago (Alvin W. DeJong, of counsel), for appellant.

Paul J. Maguire, of Chicago (Haskins, Maguire and Haskins, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

Plaintiff brought this action in the Municipal Court of Chicago to recover for damages sustained when a shipment of glue carried by defendant was exposed to freezing temperatures. Defendant appeals from an adverse judgment in the amount of $1,427.38.

The essential facts were stipulated. On January 22, 1959, plaintiff delivered to defendant, a common carrier, a shipment of thirteen drums of liquid glue, weighing almost 7,000 pounds. This amount does not constitute a full truckload. The shipment was delivered to defendant in a heated truck and the attached bill of lading had a stamped notation: "PROTECT AGAINST FREEZING BELOW 40° F." Defendant accepted the shipment and delivered it to Three Rivers, Michigan, where it was consigned to another carrier and delivered to the purchaser in Three Rivers. While

in transit, the thirteen drums of glue were subjected to temperatures below forty degrees fahrenheit, but no heat was provided as requested in the bill of lading. This resulted in damage to eight drums.

Defendant's theory is that, (1) its published tariffs, under which plaintiff shipped the glue, do not provide for protective service for less than a full truckload; and (2) under the Interstate Commerce Act, carriers may not provide a service not offered in its published tariffs. Therefore, defendant concludes, it cannot be held liable for the damage sustained by plaintiff.

■ ■ Since the enactment of the Federal laws regulating carriers engaged in interstate commerce, the Supreme Court has held that carriers are bound by their published rates and services and that they cannot provide special services not contemplated by the published tariffs. This is true even if the carrier has specifically contracted with the shipper to provide the service. Chicago & Alton R. R. Co. v. Kirby, 225 US 155. Thus, the contract between the carrier and shipper is not the bill of lading alone, but is the bill of lading plus the published tariffs. And if there be conflicts between the bill of lading and the published tariffs, the published tariffs control.

■ ■ The reason behind the rule is that the interstate commerce acts are designed to prevent discrimination among shippers by carriers. Therefore, a contract by the carrier to provide a service not included in the published tariffs is void since, "[t]he paramount requirement that tariff provisions be strictly adhered to, so that shippers may receive equal treatment, presents an insuperable obstacle to recovery." Davis v. Cornwell, 264 US 560, 562.

Since the stipulated facts admit the glue was damaged by defendant's failure to provide heat protection as requested in the bill of lading we pass on to the main

486

question, to wit, do defendant's published tariffs relieve it from liability for failing to provide the protective service specified in the bill of lading.

Certain portions of defendant's published tariffs were presented. The pertinent provisions begin with Rule 23:

## ACCEPTANCE SUBJECT TO CAPACITY AND APPROPRIATE TYPE OF VEHICLES

Sec. 2. Rates or ratings provided on freight requiring protection from heat or cold do not obligate the carrier to provide refrigeration, heater service or vehicles specially equipped for such protection, except as otherwise provided in carrier's tariffs. . . .

Supplement No. 54 to Central States Motor Freight Bureau Tariff 205–E—Item 180–0 provides an exception to the above rule:

Traffic requiring heater or refrigerator service will be accepted (except as otherwise provided in Note 1 to 20 below) only when suitable equipment is available. When suitable equipment is available, heater or refrigerator service will be furnished subject to charges provided in Items 110 and 200 of C.S.M.F.B. Tariff No. 500–F, MF–1C.C. No. 874, except as otherwise provided therein.

Whenever heater or refrigerator service is necessary for the proper protection of shipment, cosigner or owner shall notify carrier in advance of shipment.

The exceptions listed in Notes 1 to 20 are not applicable as defendant is not referred to in any of the notes.

Supplement No. 11 is as follows:

487

## Item 110–A

### HEATER SERVICE
(See Notes 1 and 2)

Except as otherwise provided, shipments subject to truckload rates do not include the cost of furnishing protective service against cold. When shipments require protection against cold and carrier is requested to furnish Heater Service, carrier will, subject to equipment available, furnish Heater Service subject to charges named below.

When carrier furnishes Heater Service, charges for such service will be in addition to transportation and all other lawful charges applicable to the shipment.

When truckload rate is as provided in Column A below the charge for Heater Service shall be as shown in Column B. Charges will be computed on the truckload minimum weight or actual weight if greater.

| Column A<br>In Cents Per 100 Pounds | Column B |
|---|---|
| Not over 112.................: | 6 |
| Over 112 not over 169........: | 6½ |
| Over 169 not over 225........: | 7 |
| Over 225 not over 337........: | 8 |
| Over 337...................: | 8½ |

NOTE 1.—The charges named in this item will not apply on local (single line) traffic for account of the carriers named in Item 111 to the extent indicated therein.

NOTE 2.—The charges named in this item will not apply on join line traffic for account of the carriers named in Item 112 to the extent indicated therein.

Items 111–G.

## RULES AND REGULATIONS EXPLANATION

### APPLICABLE ONLY AS AND WHEN SPECIFIC REFERENCE IS MADE HERETO

The Charges for Heater Service named in Item 110 will not apply on local (single line) traffic for account of the following Carriers to the extent indicated:

. . .

McNamara Motor Express, Inc., all traffic

. . .

The court heard testimony of only one witness at trial. Defendant called, as an expert witness, Mr. John W. Strickler, a member of the Inspection and Weighing Bureau of the Central Motor Freight Association of Illinois. On direct examination by defendant's counsel, Mr. Strickler testified that under Rule 111 G McNamara was not required to furnish heated service for less than truckload shipments. On cross examination, plaintiff's counsel asked Mr. Strickler to explain Item 180–0 (quoted above). Mr. Strickler's explanation was as follows:

> 180–0 states that traffic requiring heated service will be accepted subject to further conditions and those are that suitable equipment be available and that previous notice be given to the carrier.

Counsel then posed the following question:
And if these conditions are met is the service required?

Mr. Strickler answered:
Yes, the service is required.

489

Later, in response to a hypothetical question framed so that it presented the facts involved in the present controversy, Mr. Strickler stated:

> . . . If McNamara accepted that shipment with the specific agreement that they would protect against the cold, then I would say that they are liable. . . .

█ We agree with defendant's counsel that Item 110–A of McNamara's published tariffs does not provide rates for protective service on less than truckload shipments and that under this provision McNamara was not obligated to provide the heated service requested. However, the other quoted tariff provisions provide that McNamara may provide the requested service if it has suitable equipment and if advance notice is given. Such was the situation here. At best, the tariffs are unclear and ambiguous, a fact borne out by Strickler's testimony. Under such a situation, any ambiguity or reasonable doubt must be resolved against the carrier. United States v. Missouri Pacific Railroad Co., 250 F2d 805.

Finally, defendant has relied on Northwestern Fruit Exchange v. Erie R. Co., 248 Ill App 193. There, as here, the shipper brought suit against the carrier to recover damages sustained when the goods were not protected from the cold. Recovery was denied. Unlike the instant situation, the rules of classification there involved provided specifically that the shipper was responsible for providing heat.

█ As no question was raised as to the care used in the movement of the goods in question, we can only conclude, under the stipulated facts, bill of lading and tariffs before us, that defendant failed to provide a

490

service it agreed to and could provide. Therefore, the judgment below must be affirmed.

Affirmed.

MURPHY and ENGLISH, JJ., concur.