PHILLIPS ELECTRIC COMPANY, INC., Plaintiff-Appellant, v. SEKO MESSENGER SERVICE, INC., Defendant-Appellee.

First District (3rd Division)  No. 1—91—1453

Opinion filed September 23, 1992.

Buikema, Hiskes & Dillner, of South Holland, for appellant.

Madler, Peldyak & Kripton, of Chicago, for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Phillips Electric Company, Inc. (Phillips), sued defendant, Seko Messenger Service, Inc. (Seko), for a breach of contract resulting from Seko's failure to deliver an electrical bid by a specified time. Phillips sought consequential damages for its alleged loss of profits. Seko filed a motion for summary judgment, contending that its tariff, which was on file with the Illinois Commerce Commission, limited its liability to $100. The trial court granted the summary judgment. We affirm. The main issue in this case is whether a carrier is liable for consequential damages for loss of profits for failure to deliver a package on time when the carrier did not request the shipper to declare a value or inform it that its tariff limited claims for consequential damages.

At 8:20 a.m. on February 12, 1987, Phillips telephoned Seko, requesting that a bid package be delivered before 5 p.m. Seko's ordertaker was told that the package would be ready after 12 noon that day. Seko agreed to deliver the package, which was a construction bid, to Balluff & Balluff Architect and Engineers in Elmhurst, Illinois. Seko did not tell Phillips that it needed to declare a value of the package or that its tariff barred claims for consequential damages.

Seko's messenger picked up the package at 2 p.m. Nothing on the envelope stated it was deliverable before 5 p.m. or noted any urgency to deliver it by that time. There was a notation, however, on the dispatch notice that the package was to be delivered by 5 p.m. Seko did not give Phillips a copy of the bill of lading at the time of the pickup.

Seko's messenger delivered the package to its destination at 5:05 p.m. Since the door was locked, the messenger called Phillips, who gave permission to slip the bid in Balluff & Balluff's mail slot, which the messenger did at 5:15 p.m.

Balluff & Balluff refused to accept the bid package because it was received late. A few days later, Seko sent the bill of lading to Phillips. On the bill of lading's reverse side were the liability release rates that are contained in Seko's tariff.

Phillips sued Seko for a breach of contract, claiming consequential damages for lost profits allegedly suffered as a result of the late delivery. Seko filed a motion for summary judgment, contending that its tariff on file with the Illinois Commerce Commission limited its liability to $100. After reading the briefs and hearing arguments, the trial court granted the motion, stating that Phillips was bound by the limitations in Seko's tariff.

On appeal, Phillips asserts that there is a genuine issue of fact sufficiently material to require reversal of the trial court's order granting summary judgment in favor of Seko. In reviewing the summary judgment order, this court must consider all the facts in the record in the light most favorable to Phillips, which is the nonmoving party. (*Maurice Transport Co. v. Amoco Oil Co.* (1986), 144 Ill. App. 3d 156, 160.) A reviewing court will find summary judgment to have been properly granted when the issue is determinable solely as a matter of law. *Maurice Transport Co.*, 144 Ill. App. 3d at 160.

Phillips' first argument is that Seko's tariff liability limitation of $100 does not apply to Phillips' claim for consequential damages because one tariff provision precludes any consequential damages while another limits its liability to $100 for physical damage or loss unless a higher amount is declared. Phillips argues that the trial court's erroneous ruling, that the most Phillips could recover was $100, leads to the creation of an ambiguity in the tariff. If there is an ambiguity, Phillips contends that it should be resolved in favor of the shipper. *National Starch & Chemical Corp. v. McNamara Motor Express, Inc.* (1963), 40 Ill. App. 2d 484, 486.

Seko replies that its tariff's $100 limit applies to consequential damages. Seko notes that the reverse side of the bill of lading and its tariff effective as of July 10, 1986, both state:

"DECLARATION OF VALUE. The shipper or consignor hereby declares that, unless otherwise specifically indicated, the value of no total shipment or no single piece, package, parcel, or articles in this delivery, including the contents thereof, exceeds $100.00 upon which declaration the charge for delivery is based. *Any claim in excess of the said $100.00 is hereby released and discharged.* When the declared value exceeds the maximum value of $100.00 per shipment, additional insurance charges for such greater valuation will be assessed at the rate of $0.50 per $100.00 or fraction thereof." (Emphasis added.)

Seko contends that this language means that any claim, including a claim for consequential damages, is released and discharged for the amount stated. We agree.

Interpreting the Illinois statutory scheme, Seko asserts that it would be contrary to public policy to permit collection of consequential damages not allowed in a carrier's tariff. Subjecting a carrier to the risk of incurring huge damages for minor delays in deliveries would impair an established carrier's desire to continue to do business in Illinois or bankrupt the company. Therefore, the only reasonable basis for subjecting a carrier to damages is the tariff limitation. In that

way, a carrier knows and can plan to meet the burden of paying for goods lost or damaged in transit and the customer can elect whether to use the carrier subject to reimbursement for accidental loss, damage, misdelivery, or late delivery.

Seko contends that the liability limitation preempts all other means of recovery, thus properly and validly permitting Seko to limit its liability to Phillips. We agree.

■ The Illinois legislature has given the Illinois Commerce Commission (Commission) the duty to supervise and regulate the carriage of property by motor vehicle within Illinois. (Ill. Rev. Stat. 1987, ch. 95½, par. 18c—4101.) As a carrier, Seko must file a tariff with the Commission reflecting its rate schedule and any other information the Commission requires. Ill. Rev. Stat. 1987, ch. 95½, par. 18c—3201.

The purpose of the tariff is to promote uniformity and to avoid rate discrimination among shippers. (*Indiana Harbor Belt R.R. Co. v. Budd Co.* (1982), 110 Ill. App. 3d 76, 79.) It is a public document setting forth the services of a carrier being offered, the rates and charges with respect to services, and governing rules and the regulations and practices relating to those services. *Maurice Transport Co.,* 144 Ill. App. 3d at 162.

■ The contract between the carrier and shipper is the bill of lading plus the published tariff. (*National Starch & Chemical Corp.,* 40 Ill. App. 2d at 486.) If there are conflicts between the bill of lading and the published tariff, the tariff controls (*National Starch & Chemical Corp.,* 40 Ill. App. 2d at 486), having the force and effect of a statute. *Illinois Central R.R. Co. v. Sankey Brothers, Inc.* (1978), 67 Ill. App. 3d 435, 439.

The Commission tariffs are published and all parties have equal access to the tariff rates. (*Illinois Central R.R. Co.,* 67 Ill. App. 3d at 439.) The law conclusively presumes that shippers are aware of the lawful tariff rates (*Indiana Harbor Belt R.R. Co. v. Budd Co.,* 110 Ill. App. 3d at 78), and the carrier may not lawfully deviate from the conditions of its filed tariffs. (*Koontz v. South Suburban Safeway Lines, Inc.* (1948), 332 Ill. App. 14, 16.) To permit a carrier to do so would open the door to discrimination. *Koontz,* 332 Ill. App. at 16.

■ Seko's tariff provides that claims for consequential damages are limited to $100. In addition to its declaration of value, the tariff contains a box titled "Consequential Damages," which states:

> "We will not be responsible or liable for any loss or damage resulting from delay, non-delivery or damage to a package except as noted herein. This includes loss of sales income, interest

profits, attorneys fees and other costs, but is not limited to these items. Such damages are called 'consequential damages.' "

Because the bill of lading used in this case did not include the consequential damages section, there is a conflict between the bill of lading and the tariff. When such a conflict exists, the tariff controls. (*National Starch & Chemical Corp.*, 40 Ill. App. 2d at 486.) Reading the tariff as a whole, we determine that Phillips' claim for consequential damages is limited to $100.

■ In the alternative, Phillips argues that the bill of lading involved in this case is an "order" bill of lading, which requires a written agreement by the shipper for any limitation of liability. Phillips concludes that the tariff's provision is void because the bill of lading does not refer to Seko's tariff and Phillips never agreed in writing to any limitation. Although Phillips cites no Illinois cases, it cites cases based on similar Federal statutory limitations. None of those cases discuss order bills of lading. Phillips' argument fails because the bill of lading involved in this case is not an order bill of lading. It is a "straight" bill of lading, which consigns the goods to a specific person. Ill. Rev. Stat. 1987, ch. 95½, par. 18c—4802.

A bill of lading in which it is stated that the goods are consigned to the order of any person named in such bill is an order bill of lading. It is negotiable unless it is stated otherwise on its face. Ill. Rev. Stat. 1987, ch. 95½, par. 18c—4803.

■ Next, Phillips asserts that even if Seko's tariff provision limiting its liability applied to its consequential damages claim, it is inapplicable pursuant to section 18c—4804 of the Illinois Commercial Transportation Law (Ill. Rev. Stat. 1987, ch. 95½, par. 18c—4804), which requires that the limitation of liability be in writing. Phillips contends that the bill of lading shows that Phillips never declared in writing the value of the goods to be shipped; that there was no other evidence presented that Phillips agreed in writing to any released value; and Nikki Milano's affidavit states that Phillips was never told of the need to declare a value of the goods shipped. Furthermore, Phillips claims that Seko completed the bill of lading out of the presence of anyone in Phillips' office, and Phillips never saw it until after the bid was delivered late. We disagree with this argument.

Seko's tariff, which is on file with the Illinois Commerce Commission, limits its liability pursuant to section 18c—4804. That statute requires that there be a written declaration of rates, not that the shipper sign the written declaration of release rates. Since Seko's tariff and bill of lading included the declaration of value in writing, that was sufficient to satisfy the statutory requirements.

Finally, Phillips asserts that it has a common law remedy in contracts. If such a claim were proven, Phillips states, its damages would be the amount of profits it could prove it reasonably lost as a result of Seko's negligence. In addition, Phillips asserts that there is no common law contract right to limit its claim for consequential damages because Seko failed to inform Phillips of the tariff or the liability limitation, failed to inform Phillips of the need to declare a higher value of the package, failed to include it in the bill of lading, and Phillips never agreed to be bound by the provision. Since there was no meeting of the minds regarding the limitation against consequential damages, Phillips concludes, the trial court erred in ruling that Phillips' damages were limited. This argument has no merit.

The Illinois legislature declared that the statutory scheme regulating Illinois carriers is comprehensive. (Ill. Rev. Stat. 1987, ch. 95½, par. 18c—1102.) It is Illinois public policy

> "to actively supervise and regulate commercial transportation of *** property *** in such manner as to *** develop and preserve a commercial transportation system properly supportive of the broad economic development goals of the State of Illinois." Ill. Rev. Stat. 1987, ch. 95½, par. 18c—1103.

Read in conjunction with section 18c—1202(3), which provides that the Commission has the power to regulate the rates and practices of the carriers, those sections frame a comprehensive regulatory scheme that preempts any common law respecting rates or liability.

Based on the foregoing, the circuit court's summary judgment order in favor of defendant is affirmed.

Affirmed.

GREIMAN, P.J., and TULLY, J., concur.