(No. 51744

ILLINOIS CENTRAL GULF RAILROAD CO., Appellee, v. SANKEY BROTHERS, INC., Appellant.

*Opinion filed December 3, 1979.*

Thomas W. Kelty, Esq., of Pfeifer & Kelty, P.C., of Springfield, for appellant.

Paul E. Adams, of Mohan, Alewelt & Prillaman, of Springfield, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This action was brought by Illinois Central Gulf

Railroad Company (ICG) against Sankey Brothers, Inc. (Sankey), to recover the difference between the freight rates mistakenly quoted by ICG and paid by Sankey and the published rates which should have been quoted and paid. The appellate court affirmed the Sangamon County circuit court's summary judgment in favor of ICG (67 Ill. App. 3d 435), and we allowed leave to appeal. We affirm.

On the basis of previous prices mistakenly quoted by it over the telephone, ICG periodically billed Sankey Brothers for switching charges incurred in the years 1973-1976. It is undisputed that Sankey Brothers paid each of those bills promptly, but refused to pay for subsequently discovered deficiencies in the original amounts charged, and it is these deficiencies, totaling $25,747.85, which are the subject matter of this suit. The proper tariffs for the years in question were published and thus available for inspection by all shippers. Nevertheless, Sankey Brothers maintains that ICG should be estopped from collecting the deficiencies since the error in quoting the wrong rates was that of ICG, it did not make a timely demand for the corrected switching charges, and defendant would have employed alternate carriers had it realized what the ultimate rates would be.

Resolution of the present controversy requires an understanding of the statutory obligation of a carrier to collect full tariffs as provided in its published schedules. This duty is imposed by the Public Utilities Act, which provides in pertinent part:

> "[N]o public utility shall charge, demand, collect or receive a greater or less or different compensation for any product, or commodity furnished or to be furnished, or for any service rendered or to be rendered, than the rates or other charges applicable to such product or commodity or service as specified in its schedules on file and in effect at the time." Ill. Rev. Stat. 1977, ch. 111 2/3, par. 37.

> "No public utility *** shall directly or indirectly, by any device or means whatsoever, suffer or permit any corporation or person to obtain any service, commodity,

> or product at less than the rate or other charge then established and in force as shown by the schedules filed and in effect at the time. No person or corporation shall, directly or indirectly, by any device or means whatsoever, whether with or without the consent of connivance of a public utility or any of its officers, or employees, seek to obtain or obtain any service, commodity, or product at less than the rate or other charge then established and in force therefor." (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 39.)

Additional statutory language demonstrates that the purpose of this duty to collect full tariffs is to prevent "any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or disadvantage" in the rates charged by carriers for services rendered. Ill. Rev. Stat. 1977, ch. 111 2/3, par. 38.

Although the early decision of this court in *Illinois Central R.R. Co. v. Seitz* (1905), 214 Ill. 350, did permit the estoppel of a carrier from collecting deficiencies in previously paid tariffs, that case has been distinguished in subsequent decisions in this and in the appellate court (see *Kirby v. Chicago & Alton R.R. Co.* (1909), 242 Ill. 418, *rev'd on other grounds* (1912), 225 U.S. 155, 56 L. Ed. 1033, 32 S. Ct. 648; *Baxter v. Atchison, Topeka & Santa Fe Ry. Co.* (1941), 310 Ill. App. 616), and it stands in stark contrast to the case law of Federal and sister State jurisdictions.

While Federal case law does not control our resolution of this question, which deals only with intrastate commerce (*State Public Utilities Com. ex rel. Allis Brick Co. v. Chicago, Milwaukee & St. Paul Ry. Co.* (1919), 287 Ill. 412, 419; *Luken v. Lake Shore & Michigan Southern Ry. Co.* (1911), 248 Ill. 377, 383), we nevertheless find it persuasive, given the similar statutory mandate imposed by Federal law on carriers. (49 U.S.C. sec. 1004 (repealed 1978; current version at 49 U.S.C. sec. 10741 (1979).) There is some Federal authority permitting a government entity to raise the defense of estoppel when a carrier

attempts to collect a deficiency in tariffs that were previously paid (see, *e.g., United States v. Western Pacific R.R. Co.* (1956), 352 U.S. 59, 1 L. Ed. 2d 126, 77 S. Ct. 161; *Chicago, Burlington & Quincy R.R. Co. v. United States* (Ct. Cl. 1971), 439 F.2d 1224), but the Federal courts have consistently refused to entertain the defense of estoppel when raised by a private party against a carrier's demand for a deficiency in charges previously paid. *New York Central & Hudson River R.R. Co. v. York & Whitney Co.* (1921), 256 U.S. 406, 65 L. Ed. 1016, 41 S. Ct. 509; *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink* (1919), 250 U.S. 577, 63 L. Ed. 1151, 40 S. Ct. 27; *Louisville & Nashville R.R. Co. v. Maxwell* (1915), 237 U.S. 94, 59 L. Ed. 853, 35 S. Ct. 494; *Main Island Creek Coal Co. v. Chesapeake & O. Ry. Co.* (6th Cir. 1928), 23 F.2d 248; see also *Consolidated Freightways Corp. v. Admiral Corp.* (7th Cir. 1971), 442 F.2d 56; *Central Warehouse Co. v. Chicago, R.I. & P. Ry. Co.* (8th Cir. 1927), 20 F.2d 828; 38 Cornell L.Q. 596 (1953).

Moreover, this general rule among the Federal courts also represents the position of those State jurisdictions which have considered the same question in conjunction with similar statutory obligations on carriers to collect the full charges imposed by published tariffs. *Nashville, C. & St. L. Ry. Co. v. Gilliam* (1924), 212 Ala. 120, 101 So. 889; *Main Central R.R. Co. v. Fred I. Merrill, Inc.* (1961), 157 Me. 484, 174 A.2d 112; *New York, New Haven & Hartford R.R. Co. v. Lord & Spencer, Inc.* (1931), 273 Mass. 583, 174 N.E. 179; *Mobile & Ohio R.R. Co. v. Laclede Lumber Co.* (1919), 202 Mo. App. 630, 216 S.W. 798; *New York, New Haven & Hartford R.R. Co. v. Tonella* (1920), 79 N.H. 464, 111 A. 341; *Railway Express Agency, Inc. v. Youngstown Plant & Flower Co.* (C.P. Mahoning County 1960), 85 Ohio L. Abs. 440, 171 N.E.2d 220; *Cleveland, C., C. & St. L. Ry. Co. v. Southern Coal & Coke Co.* (1922), 147 Tenn. 433, 248 S.W. 297;

see also Annot., 88 A.L.R.2d 1375 (1963), and Annot., 83 A.L.R. 245 (1933).

The general rule refusing to estop a carrier from collecting deficiencies in previously paid tariffs is consonant with the explicit duty imposed on carriers by the provisions of the Illinois Public Utilities Act set forth earlier herein. To hold otherwise would risk eroding the explicit statutory prohibition against discriminatory rate charges. The inequities to shippers arguably resulting in this and other cases are not persuasive since the rates to be charged are published and, thus, are available for examination by carrier customers. We accordingly hold that, under the circumstances herein presented, ICG is not estopped from collecting the deficiencies in freight charges previously paid. To the extent it is inconsistent with this holding, the opinion in *Illinois Central R.R. Co. v. Seitz* (1905), 214 Ill. 350, is hereby overruled.

Sankey also argues that the trial court erred in dismissing its counterclaim for damages allegedly sustained through reliance on the erroneous price quotations by ICG. However, Sankey's notice of appeal seeks review only of the summary judgment order of April 5, 1978, and makes no mention of the earlier order of December 6, 1977, which dismissed the counterclaim. In these circumstances the appellate court correctly ruled that the propriety of the dismissal order was not properly before it. 58 Ill. 2d R. 303(c)(2); *Place v. Improvement Federal Savings & Loan Association* (1962), 24 Ill. 2d 245, 247; *City of Chicago v. Baran* (1972), 6 Ill. App. 3d 29, 32; *Scheffler v. Ringhofer* (1966), 67 Ill. App. 2d 222, 225; 6 Nichols, Illinois Civil Practice secs. 6133, 6135 (rev. vol. 1975).

The judgments of the appellate court and the circuit court of Sangamon County are affirmed.

*Judgments affirmed.*