MAURICE TRANSPORT COMPANY, Plaintiff-Appellant, v. AMOCO OIL COMPANY, Defendant-Appellee.

Fourth District   No. 4—85—0617

Opinion filed June 3, 1986.

Gary L. Smith, of Douglas G. Brown, P.C., of Springfield, and Merrick C. Hayes, of Hayes, Schneider, Hammer & Miles, of Bloomington, for appellant.

John R. Luedtke, of Luedtke, Hartweg & Turner, of Bloomington, and Douglas W. Johnson, of Chicago, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

Plaintiff, Maurice Transport Company, Inc., brought an action in the circuit court of McLean County against defendant, Amoco Oil Company, Inc., claiming damages for the alleged breach of a shipping contract. Thereafter, both parties filed motions for summary judgment. The circuit court entered summary judgment for the defendant. Plaintiff now appeals, contending that a genuine issue as to a material fact exists and that it was entitled to a judgment as a matter of law. For the reasons that follow, we affirm the judgment of the circuit court.

The instant record reveals that plaintiff, Maurice Transport Company, Inc., is a contract carrier operating in the State of Illinois. Plaintiff holds a contract carrier's permit issued by the Illinois Commerce Commission (Commission). This permit authorizes plaintiff to transport certain chemicals and petroleum products within the State of Illinois, "pursuant to bilateral written contracts filed *** with the [Commission]."

On May 26, 1978, plaintiff entered into a bilateral shipping contract with defendant, Amoco Oil Company, Inc. (Amoco). The contract

provided, *inter alia*:

> "The COMPANY agrees during the period of this contract to tender for shipment, and the CARRIER agrees to transport *** such quantities of liquid petroleum products as the COMPANY may require, and amounting to not less than 40,000,000 gallons per year."

This contract was effective for one year and was automatically renewable at the end of that year and each subsequent year, provided neither party terminated the agreement. Any modification or notice of termination was to be in writing by the parties.

Shortly thereafter, plaintiff prepared tariff No. 23, reflecting its rates and several other provisions contained in the shipping contract. Included in tariff No. 23 was the following gallonage requirement:

> "(a) Except as otherwise provided, the rates named in Items 310, 455, 470 and 515 are applicable only when shipper tenders to carrier 40,000,000 gallons or more, *** during a period of twelve (12) consecutive months from date of commencement."

Tariff No. 23 further provided:

> "(c) If, during any annual period, the aggregate gallonage requirement of a consignor as specified in paragraph (a) of this Item is not met, a surcharge will be assessed on the billing for the actual gallons transported at rates named in Items 310, 455, 470, and 515 ***."

On June 9, 1978, both tariff No. 23 and the shipping contract were filed with the Commission, pursuant to section 18—505 of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1977, ch. 95½, par. 18—505).

Approximately one year later, plaintiff sent Amoco a written offer to modify a portion of the contract, which Amoco executed and agreed to on July 27, 1979. This agreement modified the gallonage requirement from 40 to 100 million gallons per year. On August 10, 1979, plaintiff revised tariff No. 23, reflecting the provisions in the letter agreement, including the 100 million-gallon-tender clause. The revision to the tariff was filed with the Commission, however, the letter agreement was not.

On September 15, 1980, plaintiff again wrote to Amoco, this time offering three different proposals. In its second proposal, plaintiff offered to:

> "2. Increase our present rates by 10% and continue to haul all points that we are presently delivering assigned to the Wood River Terminal and omitting any minimum gallonage clause."

Proposals 1 and 3 involved 8% and 12% rate increases, respectively.

On September 23, 1980, Amoco's agent responded by letter, stating, "I am agreeable to a 10% rate increase effective November 17, 1980." The letter did not expressly refer to the omission of the minimum-gallonage clause. Following this exchange, plaintiff filed tariff No. 37 with the Commission, which became effective November 17, 1980. Tariff No. 37 reflected a 10% rate increase and omitted any minimum-gallonage requirement. Moreover, tariff No. 37 contained the following cancellation notice:

"CANCELLATION NOTICE

This schedule cancels [Tariff] No. 23 in its entirety.

Rates and other provisions as may have been published in the above cancelled schedule, and not provided for in this schedule, have been intentionally omitted and are hereby cancelled. Rates and other provisions as otherwise provided herein will apply."

Thereafter, on January 26, 1982, Amoco gave plaintiff written notice of its election to terminate their contract, as of March 1, 1982. Plaintiff made no objection to said termination. Rather, on May 25, 1982, plaintiff wrote to Amoco stating that only 28,550,000 gallons of petroleum products had been tendered during the contract period from July 1, 1981, to the date of the letter. Plaintiff also stated that, pursuant to the 1978 contract, Amoco should tender 11,500,000 gallons in order to meet the 40 million-gallon requirement. Amoco refused to tender the petroleum as requested.

On November 23, 1982, plaintiff filed a two-count complaint against Amoco in the circuit court of McLean County. The complaint alleged that Amoco breached the 1978 shipping contract by failing to tender a minimum of 40 million gallons of petroleum products during the contract period from July 1, 1981, to June 30, 1982. Both parties then filed motions for summary judgment and supplemental briefs. On August 14, 1985, the circuit court entered summary judgment for Amoco, finding:

"1. That the tariffs filed with the [Commission] control.

2. That *** tariff 23 *** deal[s] with minimum gallonage in that they make the rates applicable only upon a tender of a certain minimum number of gallons and they provide for surcharges if less is tendered.

3. That tariff 37 *** omits *** any reference to rates being based upon gallonage; that tariff 37 by its terms cancels tariff [23] in its entirety.

4. That defendant was no longer under any minimum gallonage obligation as of November 17, 1980.

5. That there is no genuine issue of material fact and

defendant is entitled to a judgment in its favor as a matter of law."

It is from this judgment that plaintiff appeals.

Section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c)) provides that summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Plaintiff first contends that this case contains a genuine issue of fact sufficiently material to require reversal of the circuit court's order granting summary judgment. In reviewing the order for summary judgment, we must consider all of the facts in the record and all of the grounds alleged by the parties in order to determine whether a genuine issue as to a material fact exists. (*Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1099, 441 N.E.2d 860, 863.) On appeal, all of the facts must be viewed in a light most favorable to the non-moving party. (*Montague v. School Board* (1978), 57 Ill. App. 3d 828, 373 N.E.2d 719.) A reviewing court will find summary judgment to have been properly granted when the issue was determinable solely as a matter of law. *Smith v. Rengel* (1981), 97 Ill. App. 3d 204, 205, 422 N.E.2d 1146, 1147; *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 522-23, 434 N.E.2d 50, 52.

In the case at bar, plaintiff asserts that the September 1980 correspondence between the parties raises the material factual question of whether the parties truly intended to modify the gallonage tender requirement contained in the original shipping contract. Plaintiff first points to the fact that Amoco's acceptance letter mentioned the 10% rate increase but did not expressly refer to the omission of the minimum-gallonage requirement. Plaintiff next submits that the parties' correspondence was never filed with the Commission. It is plaintiff's position that because the original shipping contract was filed with the Commission, then the parties' correspondence also had to be filed in order to constitute a valid modification of the contract. Finally, plaintiff acknowledges that tariff No. 37 omitted the gallonage requirement and was filed subsequent to the exchange of correspondence. Plaintiff maintains, however, that tariff No. 37, alone, does not constitute a valid modification of the shipping contract and that its provisions are not controlling.

While plaintiff alleges a factual dispute with regard to the modification of the shipping contract, the decisive issue in this matter, whether the provisions of tariff No. 37 control, is determinable as a

matter of law.

In the instant case, the dispute centers on the enforceability of a minimum-gallonage requirement that was contained in the original shipping contract but was omitted from tariff No. 37, the last filed with the Commission.

It is the plaintiff's contention that the parties' shipping contract is controlling and that Amoco is, therefore, bound by the minimum-gallonage provision contained therein. Plaintiff maintains that a tariff is a rate schedule only, and that it is not necessary for a carrier to include a minimum-gallonage clause in its tariff, as gallonage tender is not a rate but a volume to be handled by the carrier. Thus, plaintiff concludes that even though a gallonage requirement was omitted from tariff No. 37, its last filed, Amoco was nevertheless obligated under the gallonage requirement in the previous contract.

Amoco contends that the provisions of tariff No. 37 are controlling. It acknowledges that the shipping contract contained a gallonage-tender requirement, but points out that tariff No. 23, plaintiff's original, also contained a gallonage requirement. Amoco notes that the requirement contained in tariff No. 23 was subsequently modified, although the shipping contract was not. Both parties abided by this modification in tender until the filing of tariff No. 37, which omitted any gallonage-tender clause. Also, Amoco indicates tariff No. 37 contained the following cancellation notice:

"This schedule cancels [Tariff] No. 23 in its entirety.

Rates and other provisions as may have been published in the above cancelled schedule, and not provided for in this schedule, have been intentionally omitted and are hereby cancelled. Rates and other provisions as otherwise provided herein will apply."

Amoco submits that the gallonage requirement was directly tied to the carrier's rates and, therefore, had to be included in the tariff to be effective. Amoco concludes that because tariff No. 37 omitted the gallonage requirement and completely cancelled the previous tariff, then Amoco was no longer under such an obligation.

The Illinois legislature has placed in the Commission the duty to supervise and regulate the carriage of property by motor vehicle within Illinois (Ill. Rev. Stat. 1977, ch. 95½, par. 18—201). Under the Illinois Motor Carrier of Property Law, there are two types of motor carriers of property: common carriers and contract carriers. Ill. Rev. Stat. 1977, ch. 95½, pars. 18—100(9), (10).

Plaintiff, as a contract carrier, is a motor carrier of property for-hire that furnishes transportation services designed to meet the distinct needs of individual shippers pursuant to "individual written bi-

lateral contracts." (Ill. Rev. Stat. 1977, ch. 95½, par. 18—100(10).) A contract carrier must file a tariff with the Commission, reflecting its rate schedule and any other information that the Commission requires. (Ill. Rev. Stat. 1977, ch. 95½, par. 18—505.) Section 18—505 of the Illinois Motor Carrier of Property Law provides in pertinent part:

> "It shall be the duty of every contract carrier *** to publish *** and file with the Commission, *** schedules containing the rates and. charges of such carrier ***, and any rule, regulation, or practice affecting such rates and charges and the value of the service thereunder; ***." Ill. Rev. Stat. 1977, ch. 95½, par. 18—505.

■ A tariff has been defined as a public document setting forth the services of a carrier being offered the rates and charges with respect to services and governing rules and the regulations and practices relating to those services. (Black's Law Dictionary 1306 (5th ed. 1979).) Courts consider a tariff on file to be the legal rate between a shipper and a carrier, and the parties cannot vary from that rate. (*Aero Trucking, Inc. v. Regal Tube Co.* (7th Cir. 1979), 594 F.2d 619.) Specifically, where the rate set forth in a tariff differs from that stated in the parties' contract, courts decline to enforce the contract rate, holding the tariff rate controls. See *Aero Trucking, Inc. v. Regal Tube Co.* (7th Cir. 1979), 594 F.2d 619; *Nyad Motor Freight, Inc. v. W. T. Grant Co.* (2d Cir. 1973), 486 F.2d 1112; *A & F. Trucking Corp. v. Liggett Drug Co.* (S.D. N.Y. 1966), 253 F. Supp. 699.

■ While our research has revealed no Illinois cases addressing the precise issue before this court, our supreme court has held that parties may not deviate from the terms of the tariff on file. (*Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.* (1979), 78 Ill. 2d 56, 398 N.E.2d 3.) Additionally, where an ambiguous tariff is drafted by the carrier and its construction is in doubt, the tariff should be construed in favor of the shipper since the carrier is presumed to have used language necessary to protect its interest. *Indiana Harbor Belt R.R. Co. v. Budd Co.* (1982), 110 Ill. App. 3d 76, 441 N.E.2d 1301.

■ Thus, it is evident that the provisions of tariff No. 37, the last tariff filed, are controlling. The gallonage requirement, as a "rule, regulation, or practice affecting [plaintiff's] rates and charges," must have been included in tariff No. 37 to be enforceable. (Ill. Rev. Stat. 1977, ch. 95½, par. 18—505.) Moreover, plaintiff as the drafter of the tariff clearly could have included the requirement in order to protect its interests. Instead, plaintiff's deletion of the gallonage requirement from the tariff relieved Amoco of its obligations in that regard. Ac-

cordingly, the trial court was correct in holding that tariff No. 37 controls as a matter of law, and that Amoco was no longer under a minimum-gallonage obligation after the filing of the tariff on November 17, 1980.

For the reasons stated, the circuit court's order granting summary judgment is affirmed.

Affirmed.

WEBBER and GREEN, JJ., concur.