**MCI TELECOMMUNICATIONS CORPORATION, Plaintiff,**

v.

**AMERI–TEL, INC., Defendant.**

**AMERI–TEL, INC., Third-party Plaintiff,**

v.

**ILLINOIS BELL TELEPHONE COMPANY, Third-party Defendant.**

No. 91 C 4277.

United States District Court, N.D. Illinois, Eastern Division.

March 29, 1995.

Brian W. Lewis, John T. Benz, Lauren Smith Tashma, Wildman, Harrold, Allen & Dixon, Chicago, Il, for MCI Telecommunications Corp.

Michael A. Braun, Braun & Rivkin, Leonard E. Blum, Lee M. Weisz, Chicago, IL, for Ameri–Tel Inc.

Patrick J. Kilroy, Jr., Virginia Holden, Ameritech Corp., Chicago, IL, for Illinois Bell Telephone Co.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

On May 9, 1994, the Court entered summary judgment in favor of plaintiff MCI Telecommunication Corporation ("MCI") and against defendant/third-party plaintiff Ameri–Tel, Inc. ("Ameri–Tel") in MCI's collection action against Ameri–Tel. *See MCI Telecommunications Corp. v. Ameri–Tel, Inc.,* 852 F.Supp. 659 (N.D.Ill.1994).[1] The Court's May 9, 1994, Order awarded MCI $124,064.84 plus attorneys' fees and costs allowable under MCI's tariff.[2] The $124,064.84 award represented charges incurred by Ameri–Tel for allegedly fraudulently placed operator assisted international long-distance calls originating from pay telephones owned by Ameri–Tel.

Ameri–Tel filed a timely third-party complaint against Illinois Bell Telephone Company ("Illinois Bell")[3] alleging that the calls for

---

1. This case was originally assigned to Judge Marovich's calendar. By order of the Executive Committee, it was reassigned to this Court's calendar effective May 25, 1994.

2. MCI provided long distance telephone service to Ameri–Tel pursuant to MCI F.C.C. Tariff No. 1.

3. Illinois Bell is an Illinois corporation doing business as "Ameritech Illinois." In its own

which MCI sought payment should have been blocked or screened pursuant to an agreement Ameri–Tel had with Illinois Bell.[4] Ameri–Tel's and Illinois Bell's cross-motions for summary judgment are presently before the Court.

## FACTS

■ The following undisputed facts are gleaned from the parties' respective Local Rule 12 statements of material facts and accompanying exhibits.[5]

Ameri–Tel is an Illinois corporation in the business of owning and operating coin-operated pay telephones ("payphones"). At all relevant times, Ameri–Tel owned and operated over 1,000 payphones within Chicago and the surrounding metropolitan areas. Ameri–Tel subscribed to MCI long-distance service

from December, 1989 to January 26, 1991. Illinois Bell is a telecommunications carrier providing customer owned pay telephone service ("COPTS") to Ameri–Tel pursuant to Illinois Bell's Customer Owned Pay Telephone Service Tariff ("COPTS Tariff") on file with the Illinois Commerce Commission, Tariff Ill.C.C. No. 5. Illinois Bell was also MCI's billing agent for the Ameri–Tel account during all times relevant to this lawsuit.

MCI terminated its long-distance service to Ameri–Tel on January 26, 1991, because of Ameri–Tel's nonpayment of certain long-distance charges incurred on its payphones. Thereafter, MCI brought the underlying action against Ameri–Tel to collect $128,923.84 in charges for long-distance calls placed on Ameri–Tel payphones.[6] The majority of

---

filings, Illinois Bell refers to itself as "Ameritech." In this opinion, the Court shall refer to Illinois Bell as "Illinois Bell." On occasion, particularly when quoting materials submitted by Illinois Bell, the name "Ameritech" will be used. When it occurs, the name "Ameritech" should be understood to refer to Illinois Bell.

4. Ameri–Tel's skeletal third-party complaint against Illinois Bell does not identify the legal theory or theories upon which it is based. However, paragraph four of the third-party complaint states as follows:

> [T]he charges made to the third-party plaintiff by the original Plaintiff MCI included charges for calls which should have been blocked pursuant to the agreement Ameri–Tel had with Illinois Bell.

Thus, it would appear that the third-party complaint is premised on a breach of contract theory and perhaps a theory of implied contractual indemnification, see Carrillo v. Jam Productions, Ltd., 173 Ill.App.3d 693, 696–97, 123 Ill.Dec. 326, 328–29, 527 N.E.2d 964, 966–67 (1st Dist. 1988). In certain memoranda submitted by Ameri–Tel in connection with the pending cross-motions for summary judgment, Ameri–Tel appears to invoke theories of fraud or misrepresentation. However, since it is plain that Ameri–Tel has not pleaded fraud with particularity as required by Fed.R.Civ.P. 9(b), and because Ameri–Tel's charges of fraud come as a surprise to both Illinois Bell and the Court, we shall not consider the effects of Ameri–Tel's charges of fraud in deciding the instant cross-motions for summary judgment. We further note that Ameri–Tel's memorandum in support of its motion for summary judgment does not cite a single Illinois fraud case nor does Ameri–Tel purport to set out and establish that the elements of fraud under Illinois law have been met—thereby reinforcing

the Court's conclusion that fraud is not at issue in this dispute.

5. Local Rule 12(M)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue." The movant's statement must contain "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth." Similarly, Local Rule 12(N)(3)(a) requires the nonmoving party to file a concise response to the movant's statement including, in the case of any disagreement, specific references to supporting materials. The nonmoving party may also submit a statement of "additional facts that require the denial of summary judgment," see Local Rule 12(N)(3)(b), with respect to which the movant, in turn, may respond, see Local Rule 12(M). All material facts set forth in either party's statement are deemed admitted unless controverted by the statement of the opposing party. Local Rule 12(M) and 12(N)(3)(b); see also Flaherty v. Gas Research Inst., 31 F.3d 451, 453 (7th Cir.1994); Waldridge v. American Hoechst Corp., 24 F.3d 918, 921–22 (7th Cir.1994). In this regard, it should be noted that in response to Ameri–Tel's Local Rule 12(M)(3) statement of facts, Illinois Bell appropriately filed a Local Rule 12(N)(3)(a) response as well as a Local Rule 12(N)(3)(b) statement of additional facts requiring the denial of summary judgment. Ameri–Tel did not reply to Illinois Bell's Local Rule 12(N)(3)(b) statement. Accordingly, pursuant to Rule 12(M), all material facts set forth in Illinois Bell's Local Rule 12(N)(3)(b) statement will be deemed admitted.

6. In its second amended complaint, MCI originally sought $128,923.84. MCI later reduced the amount it sought by $4,859.00, accepting as true

long-distance calls for which MCI sought recovery in the underlying debt collection action were operator assisted international long-distance calls. *See MCI Telecommunications Corp. v. Ameri–Tel, Inc.,* 852 F.Supp. 659, 666–67; *see also* Illinois Bell's Local Rule 12(M) Facts ¶ 13.

Ameri–Tel has conceded that it is solely responsible for payment of all international calls made through MCI from its payphones prior to June 1, 1990. Thus, the only time period relevant to the third party action is June 1, 1990 to January 26, 1991, the date on which MCI terminated its long distance service to Ameri–Tel. Illinois Bell's Local Rule 12(M) Facts ¶ 11.

Beginning in June of 1990, pursuant to its revised COPTS Tariff, Illinois Bell offered an optional blocking service entitled International Direct Distance Dialed ("IDDD") Blocking which blocked direct dialed international calls; operator assisted international calls were not blocked by the IDDD blocking service. As of June 1, 1990, Ameri–Tel ordered IDDD blocking service for all new lines ordered by Ameri–Tel.[7]

In addition to IDDD blocking, Ameri–Tel also subscribed to and paid for outgoing screening for *some* of its phones.[8] Relying, *inter alia,* on Illinois Bell's Customer/Vendor Information Handbook, Ameri–Tel contends that under Illinois Bell's outgoing screening service, "calls placed through an operator are restricted to those charged to the number called, a third number or a calling card." [9] Ameri–Tel's 12(M) Facts ¶ 17. Illinois Bell, in contrast, maintains that "Ameritech's outgoing screening only blocked operator assisted, international calls placed through an Ameritech operator. Calls that were placed through an alternate operator service or through an MCI operator were not blocked by outgoing screening." Illinois Bell's 12(N) Facts ¶ 17.

Mervyn Dukatt, Ameri–Tel's president, and Gina Lubrano, Ameri–Tel's "main contact" for Illinois Bell's billing representative from April 1990 to April 1991, both attested that no one from Illinois Bell ever informed them that either the IDDD blocking service or the outgoing call screening were less than 100% effective. *See* Dukatt Aff. ¶ 4; Lubrano Aff. ¶ 5. However, Wendy Schutts, Illinois Bell's billing representative responsible for the Ameri–Tel account, attested that she advised "Ms. Lubrano on a vast number of

---

for purposes of its summary judgment motion that Ameri–Tel was not responsible for international calls made on six of the accounts claimed by MCI. *See* MCI's Mem.Supp.Mot.Summ.J. at 2–3 & n. 1.

7. Illinois Bell admits that Ameri–Tel subscribes to IDDD blocking for certain of its telephone lines and concedes that "[t]o the extent that any of the [MCI] invoices include charges for direct dialed international long distance calls, and [Ameri–Tel] subscribed to IDDD services for the telephone number listed on the invoice, Illinois Bell admits that that call should have been blocked...." Illinois Bell's 12(N) Facts ¶ 15. The IDDD service, therefore, is not at issue in this case. *See* Illinois Bell's Mem. Opp.Mot.Summ.J. at 2 n. 1.

8. While Ameri–Tel at least implicitly suggests that it ordered operator screening for all of its phones both before and after June 1, 1990, *see* Ameri–Tel's 12(M) Facts ¶¶ 15, 17, Illinois Bell denies that Ameri–Tel ordered screening on *all* of its payphone lines either before or after that date, *see* Illinois Bell's 12(N) Facts ¶¶ 15, 17. Neither party has submitted sufficient records in connection with their respective motions for summary judgment to enable the Court to determine which of Ameri–Tel's payphone lines subscribed to outgoing screening or when Ameri–Tel subscribed to the service for any particular line. In a similar vein, Ameri–Tel has not submitted any records that would enable the Court to determine whether the operator assisted international calls at issue in the underlying action were made from Ameri–Tel payphone lines that subscribed to outgoing screening at the time the calls were made.

9. Illinois Bell's Customer/Vendor Information Handbook describes its "outgoing screening" service as follows:

Calls placed through an operator are restricted to those charged to the called number (collect), a third number, or calling card.

Ameri–Tel's Mem.Supp.Mot.Summ.J., Ex. F, Illinois Bell's Customer/Vendor Information Handbook at Bates Stamped page 296. This language essentially repeats the language of Illinois Bell's COPTS Tariff which defines the outgoing screening as follows:

Calls through an operator shall be restricted to those charged to the called number, a third number or calling card (required unless the customer can demonstrate that the customer-provided pay telephone equipment can perform this function).

Illinois Bell's Local Rule 12(N) Facts, Ex. F, COPTS Tariff, ¶ G(3).

occasions of the fact that Ameritech's blocking and screening services did not·block the type of operator assisted long-distance calls that were being made from Ameri–Tel's payphones." Schutts Aff ¶ 8.[10] In particular, Schutts attested that she:

> informed. Ms. Lubrano that the outgoing screening service and the IDDD service were not 100% effective in that payphone customers could get around the blocking and screening mechanisms in a variety of ways including ... 1) bypassing [the] Ameritech system by dialing the long distance carrier operator; 2) by using an alternate operator service; 3) by dialing an access code that went directly to the long distance carrier....

*Id.* ¶ 9.

Ms. Lubrano also testified as to the procedures followed by Ameri–Tel in ascertaining whether the revenues collected by each Ameri–Tel payphone covered the amount of the Illinois Bell invoice, and in resolving billing discrepancies. Ms. Lubrano testified that if a discrepancy involved an international call, Ameri–Tel would not pay that portion of the bill. She further testified that Ms. Schutts informed her that Ameri–Tel did not have to pay international calls—that "all of that should be stopped with the blocking." Lubrano Dep. at 29. Ms. Lubrano testified that when she discovered billing discrepancies involving international calls, she would compile sheets consisting of information concerning the disputed charge (e.g., date, amount, and payphone line) and then transmit the information to Illinois Bell. In turn, Illinois Bell removed the contested charges from Ameri–Tel's bill and sent Ameri–Tel a confirmation that an adjustment to its long distance bill

had been made. *Id.* at 25–32. Illinois Bell's actions in removing the contested charge were taken pursuant to an agreement between MCI and Illinois Bell under which Illinois Bell acted as MCI's billing agent. Schutts Aff. ¶ 10. On each occasion that an adjustment was made to an Ameri–Tel bill, Ameri–Tel was informed that the adjustment was made by Illinois Bell solely in its capacity as billing agent for MCI and that MCI retained the right to seek collection of the disputed charges through its own procedures. Illinois Bell's Local Rule 12(N)(3)(b) Facts, ¶¶ 19, 20.

Ameri–Tel has admitted for purposes of its motion for summary judgment that its review of the relevant MCI invoices establishes that only $69,140 was due and owing MCI for the international calls made during the relevant time period—not the $124.064.84 amount for which judgment was entered in favor of MCI against Ameri–Tel. *Id.* ¶ 21; *see also* Ameri–Tel's Mem.Resp.Ill. Bell's Mot.Summ.J. at 2, 3.[11]

Ameri–Tel moves for summary judgment in the amount of $69,140 contending that Illinois Bell's outgoing screening service failed to restrict the operator assisted international calls giving rise to the charges at issue in the underlying suit. In its cross-motion for summary judgment, Illinois Bell contends that the evidence does not support Ameri–Tel's contention that it had an agreement with Illinois Bell to block àll operator assisted international calls; rather, Illinois Bell maintains that the agreement to provide outgoing screening service only related to calls placed through an Illinois Bell operator. Illinois Bell also contends that the limitation

---

**10.** In her deposition, Lubrano testified that she was first informed of the existence of IDDD blocking by Schutts who advised her to order the service for any lines that did not already subscribe to the service. Lubrano Dep. at 88–89. Although her deposition testimony is less clear in this regard, it also appears that Lubrano's testimony was that Schutts also advised her to subscribe to outgoing screening on all of Ameri–Tel's payphone lines. *See id.* at 90–91. Schutts, on the other hand, attested that she never recommended or encouraged Lubrano to subscribe to the IDDD blocking service and "did not market Ameritech blocking and screening services to Ameri–Tel." *See* Schutts Aff. ¶¶ 5–7. Nevertheless, Schutts acknowledges that she had numerous conversations with Lubrano during the period of June 1990 through January 1991, with respect to the IDDD blocking service and the outgoing screening service because Ameri–Tel was having repeated problems with its payphone accounts involving international calls being made from its payphones.

**11.** In the underlying action by MCI against Ameri–Tel, Ameri–Tel failed to file a Local Rule 12(N) response to MCI's Local Rule 12(M) statement of material facts thereby forfeiting its right to contest the $124,064.84 sum allegedly due and owing to MCI.

on liability provision contained in its COPTS Tariff prohibits Ameri–Tel from recovering on its indemnification claim. Finally, for a variety of reasons, Illinois Bell maintains that Ameri–Tel cannot recover on an indemnification theory.

## ANALYSIS

### Summary Judgment Standards

■■■ Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in a light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987), and draw all inferences in the nonmovant's favor. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir.1990). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1032 (7th Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513–14. Finally, we note that mere conclusory assertions, unsupported by specific facts, made in depositions or affidavits opposing a motion for summary judgment, are not sufficient to defeat a proper motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990) ("The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985) ("Conclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact"); *see also Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir.1994) (" 'Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.' ", quoting *McDonnell v. Cournia*, 990 F.2d 963, 969 (7th Cir.1993)).

■■■ Where, as here, cross-motions for summary judgment have been submitted, the court is not required to grant judgment as a matter of law for one side or the other. *Heublein, Inc. v. U.S.*, 996 F.2d 1455, 1461 (2d Cir.1993). The court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Id.; Buttitta v. City of Chicago*, 803 F.Supp. 213, 217 (N.D.Ill.1992), *aff'd*, 9 F.3d 1198 (7th Cir. 1993).

### Ameri–Tel's Motion for Summary Judgment

■■■ Ameri–Tel's central contention underlying its motion for summary judgment is that the outgoing screening service to which it subscribed from Illinois Bell was wholly ineffective in restricting the operator assisted international calls that were the subject of MCI's underlying collection action. In response, Illinois Bell argues that its outgoing screening service blocked only those international calls made through an Illinois Bell operator and that its outgoing screening service did not have the capability to block international operator assisted calls initiated from Ameri–Tel payphones where MCI was the long distance carrier. *See* Illinois Bell's Mem.Opp.Mot.Summ.J. at 2–4.[12]

---

12. A federal court sitting in Illinois, exercising diversity jurisdiction, must apply the substantive law of Illinois, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), including Illinois' choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In the instant case, there is no dispute

It is uncontroverted that Ameri–Tel subscribed to Illinois Bell's outgoing screening service on at least some of its lines during the relevant time period. It is also uncontroverted that Illinois Bell provided its outgoing screening service to Ameri–Tel pursuant to its COPTS Tariff—and in this sense the terms of the Tariff are incorporated into the service agreements entered into by and between Ameri–Tel and Illinois Bell. Finally, it is also uncontroverted that the relevant language of the COPTS Tariff does not limit or otherwise qualify the outgoing screening service to calls placed through an Illinois Bell operator.[13] The COPTS Tariff defines the outgoing screening service as follows:

Calls through an operator shall be restricted to those charged to the called number, a third number or calling card (required unless the customer can demonstrate that the customer-provided pay telephone equipment can perform this function).

Illinois Bell's Local Rule 12(N) Facts, Ex. F, COPTS Tariff, ¶ G(3). Illinois Bell's Customer/Vendor Information Handbook defines the service in a materially identical fashion: "Calls placed through an operator are restricted...."[14] Ameri–Tel's Mem.Supp. Mot.Summ.J., Ex. F, Illinois Bell's Customer/Vendor Information Handbook at Bates Stamped page 296.

In both instances, the operative expression is the unqualified expression "an operator." The Court finds this language to be unambiguously clear on its face; and, Illinois Bell does not explicitly argue to the contrary, instead it proffers evidence to establish that its outgoing screening service is only applicable to calls placed through an Illinois Bell operator. *See, e.g.,* Illinois Bell, Mem.Supp. Mot.Summ.J., Ex. H., Martin Aff., ¶ 8. However, its efforts in this regard are unavailing. At most, Illinois Bell's efforts in this regard establish that it was providing outgoing screening services to Ameri–Tel on terms at variance from those set out in its tariff (and reinforced by its Customer/Vendor Information Handbook).

As Illinois Bell correctly notes, "once a tariff is properly filed, the tariff, rather than individual private contracts, defines and discloses the terms and conditions upon which a carrier provides services to its customers." Illinois Bell, Mem.Supp.Mot. Summ.J. at 5–6 (citing *In re Illinois Bell Switching Station Litigation,* 161 Ill.2d 233, 204 Ill.Dec. 216, 641 N.E.2d 440 (1994) (Miller, J., specially concurring)). Similarly, Illinois Bell correctly notes that "[t]he terms of a filed tariff cannot be legally varied by the parties." *Id.* at 6. In the context of discussing the Illinois Motor Carrier of Property Law in *Maurice Transport Co. v. Amoco Oil Co.,* 144 Ill.App.3d 156, 98 Ill.Dec. 616, 494 N.E.2d 738 (4th Dist.1986), the Illinois appellate court discussed the force and effect of a tariff filed with the Illinois Commerce Commission. The court's remarks are equally applicable in the present context:

Courts consider a tariff on file to be the legal rate between a shipper and a carrier, and the parties cannot vary from that rate. (*Aero Trucking, Inc. v. Regal Tube Co.* (7th Cir.1979), 594 F.2d 619.) Specifically, where the rate set forth in a tariff differs from that stated in the parties' contract, courts decline to enforce the contract rate, holding the tariff rate controls....

... [O]ur supreme court has held that parties may not deviate from the terms of the tariff on file. (*Illinois Central Gulf*

Accordingly, Illinois Bell has waived any argument to the effect that provisions of the Tariff not presented to the Court militate against our interpretation of the Tariff.

---

that Illinois law governs Ameri–Tel's third-party complaint.

**13.** Indeed, Illinois Bell is conspicuously silent on the issue, apparently adopting the "out of sight, out of mind" approach. There is not a single sentence accounting for the pertinent language in its COPTS Tariff in any of Illinois Bell's memoranda submitted in conjunction with the pending cross-motions for summary judgment. In the same vein, Illinois Bell has only provided the Court with two pages of its COPTS Tariff; therefore, the Court is unable to consider the tariff as a whole in interpreting the language at issue.

**14.** The Customer/Vendor Information Handbook also reinforces that, "The terms and conditions under which Illinois Bell provides telecommunications services are set forth in this Company's tariffs, which have been filed with and approved by the Illinois Commerce Commission (ICC)." Illinois Bell's Customer/Vendor Information Handbook at Bates Stamped page 276.

*R.R. Co. v. Sankey Brothers, Inc.* (1979), 78 Ill.2d 56, 34 Ill.Dec. 328, 398 N.E.2d 3.) Additionally, where an ambiguous tariff is drafted by the carrier and its construction is in doubt, the tariff should be construed in favor of the shipper, since the carrier is presumed to have used language necessary to protect its interest. *Indiana Harbor Belt R.R. Co. v. Budd Co.* (1982), 110 Ill. App.3d 76, 65 Ill.Dec. 787, 441 N.E.2d 1301.

*Id.,* 144 Ill.App.3d at 162, 98 Ill.Dec. at 620, 494 N.E.2d at 742.

As this excerpt indicates, it is the plain and unambiguous language of Illinois Bell's tariff on file with the Illinois Commerce Commission that must control the outcome of this case.[15] As Ameri–Tel maintains, the tariff provides that "[c]alls through an operator shall be restricted . . ." There is no qualification on the expression "an operator" in the tariff and the Court shall decline Illinois Bell's implicit invitation to read any qualification into that language now.[16]

Illinois Bell has adduced absolutely no evidence bearing directly on the meaning of the expression "an operator" as used in the tariff. Instead, Illinois Bell has offered to the effect that the outgoing screening service "allows *an Ameritech operator* to monitor the billing of calls from privately owned pay telephones." Illinois Bell, Mem.Supp.Mot. Summ.J., Ex. H., Martin Aff., ¶ 8 (emphasis added). No one, not even Ameri–Tel, appears to dispute this proposition. However, the issue is not what the outgoing screening

service actually does; rather, it is what the outgoing screening service purports to do under the terms of the tariff.[17] The answer to that question is that the service should restrict calls placed through "an operator"— not simply an *Illinois Bell* operator.

Illinois Bell argues that Ameri–Tel's concession that it is solely responsible for *all* international long distance calls incurred on Ameri–Tel's payphones prior to June 1, 1990, in conjunction with Ameri–Tel's claim that it subscribed to outgoing screening prior to June 1, 1990, compels the conclusion that Illinois Bell's outgoing screening service did not involve an agreement to block operator assisted international long-distance calls such as those involved in this case. Indeed, Ameri–Tel's president, Mervyn Dukatt, testified in his deposition that Ameri–Tel did not "have any agreement with Illinois Bell to block any numbers." Dukatt Dep. at 9. This admission by Mr. Dukatt has given the court some pause because, plainly, no change in Illinois Bell's outgoing screening service occurred as of June 1, 1990; hence, Mr. Dukatt's admission is flatly inconsistent with Ameri–Tel's position that the screening service should have blocked calls after June 1, 1990. However, for two reasons we cannot reach the conclusion urged upon us by Illinois Bell. In the first place, as Illinois Bell has repeatedly argued in its memoranda, Ameri–Tel appears to be seriously confused about the nature of the services it subscribes to from Illinois Bell.[18] The Court is not

---

**15.** In its memoranda, Illinois Bell repeatedly argues that Ameri–Tel has not adduced any evidence establishing that agents of Illinois Bell represented to Ameri–Tel that the outgoing screening service would block all calls placed through any or all operators. This argument, however, is a red herring. Ameri–Tel is not asserting a fraud claim. Rather, its claim is that Illinois Bell breached its service agreement by failing to provide outgoing screening in accordance with the terms of its tariff. And, it is uncontroverted that Ameri–Tel subscribed to outgoing screening on *some* of its payphone lines. Insofar as Illinois Bell contends that Ameri–Tel's position lacks foundation in the language of the tariff itself, the Court cannot agree.

**16.** Illinois Bell argues that common sense compels the conclusion that its "tariff was limited to services provided to customers *by* Ameritech and its operators." Although this "common sense"

argument has some intuitive appeal, it does not withstand scrutiny. In the first place, it can hardly be doubted that Illinois Bell was aware that payphone owners could select any one of a number of long distance carriers and operator services. Moreover, Illinois Bell was well aware that payphone users could reach an operator service provider other than the one chosen by the owner of the phone by dialing certain digits. Yet, Illinois Bell made no effort, in light of such awareness, to qualify the language of its Tariff in such a manner so as to indicate that the outgoing screening service is only effective with respect to calls placed through an Illinois Bell operator.

**17.** Illinois Bell's memoranda persistently sidestep this fundamental issue.

**18.** Indeed, as noted by Illinois Bell, Mr. Dukatt's use of the June 1, 1990 date is not arbitrary.

inclined to allow this confusion—which Illinois Bell plainly recognizes and which may underlie Mr. Dukatt's admission—to inure to Illinois Bell's benefit. While we will hold Ameri–Tel to Mr. Dukatt's admission insofar as it limits the relevant time period at issue in this case, we do not regard the admission as particularly probative evidence as to the nature of Illinois Bell's outgoing screening service. Second, and more significantly, even if we were to conclude that Ameri–Tel and Illinois Bell agreed that the outgoing screening service only applied to calls placed through an Illinois Bell operator, this Court will not enforce an agreement that varies from the express terms of the Tariff.[19] *In re Illinois Bell Switching Station Litigation,* 161 Ill.2d 233, 204 Ill.Dec. 216, 641 N.E.2d 440 (1994) (Miller, J., specially concurring) (noting that a company may not deviate from the terms of the tariff); *Maurice Transport Co. v. Amoco Oil Co.,* 144 Ill.App.3d 156, 98 Ill.Dec. 616, 494 N.E.2d 738 (4th Dist.1986) (noting that parties may not deviate from the terms of a filed tariff); *Illinois Bell Telephone Co. v. Miner,* 11 Ill.App.2d 44, 58, 136 N.E.2d 1, 8 (1956) (noting that both the subscriber and the utility are bound by the terms of the tariff and cannot deviate therefrom).

 It is the Court's conclusion that Illinois Bell failed to provide outgoing screening services pursuant to the terms of its COPTS Tariff. Accordingly, we find that Illinois Bell has breached its agreement with Ameri–Tel to provide outgoing screening services.[20] Under Illinois law, a party aggrieved by another's breach of contract is entitled to damages for those injuries naturally arising from the breach. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.,* 118 Ill.2d 306, 318, 113 Ill.Dec. 252, 258, 515 N.E.2d 61, 67 (1987). In the instant case, we have no reservation in finding that the charges at issue were the natural result of Illinois Bell's failure to provide outgoing screening in accordance with the terms of its COPTS Tariff.

 Nevertheless, what the COPTS Tariff appears to give with the one hand, it takes away with the other. The COPTS Tariff includes the following express limitation on liability:

> The liability of the Company for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission occurring in the course of furnishing service or other facilities, and not caused by the negligence of the customer, shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistake, omission, interruption, delay, error or defect in transmission occurs. No other liability shall in any case attach to the Company.

Illinois Bell's Mem.Supp.Mot.Summ.J., Ex. L, COPTS Tariff Part 1, Section 5, ¶ 3.1. *See MCI Telecommunications Corp. v. Premium Marketing Sys., Inc.,* 1992 WL 6693 (N.D.Ill. Jan. 15, 1992) ("Where telecommunications services are provided under the terms of a tariff filed with the F.C.C., the tariff controls the rights and liabilities of the parties as a matter of law. This includes any limitation upon liability imposed by the tariff.").[21]

---

That is the date that Illinois Bell first made available IDDD blocking. Thus, it appears that Mr. Dukatt was somehow confusing the two services.

**19.** For this reason, Illinois Bell's arguments to the effect that Ameri–Tel had knowledge of and had accepted the qualification of the language of the Tariff are unavailing. *See* Illinois Bell's Reply Supp.Mot.Summ.J. at 4.

**20.** Because we find that this case can be decided solely on a breach of contract theory, we do not address the issues relating to the potential implied contractual indemnity theory lurking in this case. In particular, we need not reach the question of whether recovery under an implied contractual indemnity theory must be "all or nothing," *see Heinrich v. Peabody Int'l Corp.,* 99 Ill.2d 344, 349, 76 Ill.Dec. 800, 803, 459 N.E.2d 935, 938 (1984) (distinguishing between contribution and indemnity in the tort context noting, *inter alia,* that "indemnity is all or nothing"), particularly under the facts of this case.

**21.** Ameri–Tel contends that Illinois Bell may not rely on the COPTS Tariff's limitation on liability because Illinois Bell did not specifically plead it as an affirmative defense pursuant to Fed. R.Civ.P. 8(c). Generally, an affirmative defense that is not specifically pleaded pursuant to Rule 8(c) is waived. *See Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 235 (7th Cir.1991). However, in the absence of prejudice to the opposing

Pursuant to Fed.R.Civ.P. 56(c), the Court may, and hereby enters summary judgment in favor of Ameri–Tel and against Illinois Bell on the issue of liability as a result of Illinois Bell's failure to provide outgoing screening service in accordance with the terms of its COPTS Tariff. Because the parties have not supplied sufficient information for the Court to determine the amount that Ameri–Tel is entitled to recover under the terms of the tariff, the Court is precluded from entering an appropriate judgment on the amount of damages Ameri–Tel should recover.[22] Accordingly, within 14 days of the date of this order, Ameri–Tel is directed to file a memorandum supported by appropriate exhibits establishing its damages pursuant to this order, as well as a proposed final judgment order. Illinois Bell shall have 14 days thereafter to file a response or objections, if any, to Ameri–Tel's memorandum and proposed order. Of course, if the parties can agree as to Ameri–Tel's damages, they are free to submit a stipulation as to the amount rather than submitting memoranda and exhibits.[23]

## CONCLUSION

Third-party plaintiff Ameri–Tel, Inc.'s motion for summary judgment [84–1] is granted. Third-party defendant Illinois Bell Telephone Company's motion for summary judgment

---

party, courts have allowed affirmative defenses to be raised in a post-answer motion for summary judgment. *See Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (1989); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1989); *cf. Central States, S.E. & S.W. Areas Pension Fund v. Jordan*, 127 L.R.R.M. (BNA) 2795, 1987 WL 17493 (N.D.Ill.1987), *rev'd on other grounds*, 873 F.2d 149 (7th Cir.1989); *see generally* 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE AND PROCEDURE: CIVIL 2d § 1278. As noted by Chief Judge Moran in *Central States*, the requirements of Rule 8(c) are designed to eliminate unfair surprise and possible prejudice to the plaintiff. In the instant case, neither unfair surprise nor prejudice to Ameri–Tel will result from permitting Illinois Bell to assert the Tariff's limitation on liability provision. Several observations are apropos in this regard. In the first place, Ameri–Tel can hardly claim surprise regarding the existence of the Tariff's limitation on liability provision—subscribers are presumed to know the terms of the Tariff. *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619 (7th Cir.1979); *Indiana Harbor Belt R.R. Co. v. Budd Co.*, 110 Ill.App.3d 76, 65 Ill.Dec. 787, 441 N.E.2d 1301 (1st Dist. 1982). Moreover, it would be manifestly unfair to permit Ameri–Tel to invoke certain provisions of the Tariff while crying surprise with respect to others such as the liability limitation provision. Furthermore, Ameri–Tel does not even purport to argue that it would be prejudiced by the assertion of this defense; instead, it merely invokes the general rule that an affirmative defense not specifically pleaded is waived. Finally, it must be recognized, as Illinois Bell correctly notes, that under Fed.R.Civ.P. 15(a), leave to amend pleadings "shall be freely given when justice so requires." Upon a proper motion to amend by Illinois Bell, this Court would grant Illinois Bell leave to amend its answer to assert its liability limitation affirmative defense. Therefore, Ameri–Tel can hardly maintain that it is prejudiced by the Court's consideration of the limitation on liability provision of the Tariff.

22. Ameri–Tel has already conceded that its maximum amount of damages is $69,140; however, it has adduced no evidence in the form of itemized invoices, for example, demonstrating that this full amount is attributable to charges resulting from operator assisted calls originating from Ameri–Tel payphone lines that subscribed to outgoing screening during the relevant time period. In order to determine the amount of damages to which Ameri–Tel is entitled, the Court would require evidence with respect to (1) the amount paid by Ameri–Tel to Illinois Bell during the relevant time period June 1, 1990 to January 26, 1991 for the outgoing screening service, and/or (2) the amount of charges resulting from operator assisted calls originating from Ameri–Tel payphone lines that subscribed to outgoing screening during the relevant time period and for which Ameri–Tel was found liable to MCI in the underlying action. In view of the Court's determination as to liability—in conjunction with the limitation on liability contained in the COPTS Tariff, Ameri–Tel would be entitled to whichever of these two amounts is less.

23. The foregoing discussion sufficiently addresses all of the major arguments in Illinois Bell's cross-motion for summary judgment. Therefore, for the sake of economy, the Court will not write separately on Illinois Bell's cross-motion which is, of course, denied. One argument offered by Illinois Bell in support of its motion for summary judgment not addressed above is that Ameri–Tel cannot substantiate its claim because it will not be able to produce the relevant MCI invoices. Illinois Bell does not represent that Ameri–Tel did not, in fact, subscribe to outgoing screening on some of its lines during the relevant period—giving rise, at least in part, to Ameri–Tel's liability to MCI. Nor will the Court draw this inference in Illinois Bell's favor. In the event that Ameri–Tel cannot properly support its damages claim in the supplemental memorandum that it files pursuant to this order, Illinois Bell may then reassert its position that Ameri–Tel is not entitled to any recovery.

is denied. Ameri–Tel, Inc. is directed to submit a memorandum with supporting exhibits establishing its damages, and a proposed judgment order within 14 days. Illinois Bell shall have 14 days thereafter to file a response or objections, if any, to Ameri–Tel's memorandum and proposed order.

This order shall constitute a final order pursuant to Fed.R.Civ.P. 58 with respect to liability. This case shall only proceed for the strict purpose of determining an appropriate amount of damages to be awarded third-party plaintiff Ameri–Tel.